7 F.3d 232
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
CLARENDON LTD., et al., Plaintiff-Appellee,
v.
Eddie W. FOSTER, et al., Defendant-Appellant.
 No. 92-5626.
 United States Court of Appeals, Sixth Circuit.
 Sept. 2, 1993.
 
 Before BOGGS and BATCHELDER, Circuit Judges and MANOS, District Judge.*
 PER CURIAM.
 
 
 1
 On February 15, 1991, Clarendon Ltd., and Clarendon Coal, Inc., plaintiffs, filed the above-captioned action against Eddie W. Foster, Roger L. Ball, Sr., and Coal River Management, Inc., defendants, alleging fraudulent misrepresentation, breach of contract and breach of guaranty. The cause of action against Ball was for fraudulent misrepresentations concerning the financial condition of Lynk Coal Company, owned by Foster and managed by Ball and his company, Coal River Management, Inc. The plaintiffs alleged that Ball made the misrepresentations in connection with a loan of $199,945.51 they made to Lynk Coal.
 
 
 2
 Jurisdiction in the District Court was predicated upon 28 U.S.C. § 1332.[1] This court has jurisdiction pursuant to 28 U.S.C. § 1291.[2]
 
 
 3
 For the following reasons we affirm the district court in part, and remand in part.
 
 I.
 
 4
 Eddie Foster, defendant, operated Lynk Coal Company which was experiencing some financial problems in early 1990. Foster, on behalf of Lynk, sought financial help from Clarendon Ltd. and Clarendon Coal Company, plaintiffs. He told them that although he had extensive experience in mining, he had little experience in business and financial matters and that, in part, was the reason for Lynk's financial problems. However, he told them he would hire someone with experience to handle and manage the business and financial operations. Sometime prior to May, 1990, he hired Roger Ball and his company Coal River Management.
 
 
 5
 On May 4, 1990, Ball told plaintiffs that Lynk was in immediate need of $40,000 for spare parts and back wages. Clarendon Coal loaned the money to Lynk and sent it to Coal River.
 
 
 6
 In June, 1990, the plaintiffs and Ball and Foster met to review the various loan documents which were executed on June 21, 1990. One of the documents was a promissory note in the amount of nearly $200,000, which included the loan for spare parts and back wages.
 
 
 7
 At the closing Foster and Ball represented that, inter alia, 1.) Lynk was solvent, 2.) there had been no material adverse change in Lynk's financial condition since March 19, 1990, 3.) there was "no litigation, legal proceeding or other action of any nature pending against Lynk that might materially affect its ability to carry on business", and 4.) "no material misstatements or omissions had been made by Lynk to the plaintiffs in connection with the agreements."
 
 
 8
 Known to Ball and Foster before executing the note, but not to Clarendon, Lynk, on June 5, 1990, filed a voluntary petition in bankruptcy under Chapter 11 of the United States Bankruptcy Code. Both Ball and Foster prepared the bankruptcy documents. They did not inform plaintiffs of this. In September, 1990, plaintiffs discovered the bankruptcy filing.
 
 
 9
 On February 15, 1991, the plaintiffs initiated the above captioned action charging that they were defrauded by the misrepresentations and omissions of Ball and Foster and, in reliance on them, made the loan to Lynk. They further charge that the defendants breached their contract and guaranty because none of the obligations under the promissory note has been repaid.
 
 
 10
 Following the suit, Ball retained Morton Taubman, who had been his attorney in different legal matters for over ten years. Taubman had recently joined the Washington, D.C. firm of Dunnells, Duvall & Porter ("Dunnells, Duvall") as "of counsel." On Taubman's recommendation, Ball retained Dunnells, Duvall. It in turn retained the Nashville, Tennessee firm of Boult, Cummings, Conners & Berry ("Boult, Cummings") as local counsel and Ball agreed to pay a $25,000 retainer to Dunnells, Duvall and any costs incurred by both firms.
 
 
 11
 On March 12, 1991, Ball issued two checks totalling $40,000. One, in the amount of $20,000, was payable to Morton Taubman and the other, also in the amount of $20,000, was payable to Dunnells, Duvall. Taubman endorsed both checks and deposited them in his wife's account.
 
 
 12
 On March 22, 1991, Ball issued a check to Dunnells, Duvall in the amount of $25,000. Based on this payment, Dunnells, Duvall proceeded to perform legal services and incur costs.
 
 
 13
 On April 15, 1991, Dunnells, Duvall and Boult, Cummings moved, on behalf of Ball, to dismiss or transfer venue.
 
 
 14
 On May 7, 1991, Ball was notified that his $25,000 retainer check to Dunnells, Duvall had not been honored because of insufficient funds. Ball promised to send another, but did not.
 
 
 15
 On May 23, 1991, Dunnells, Duvall wrote Ball and informed him that it and Boult, Cummings would move to withdraw from the case unless Ball paid its retainer and the costs incurred.
 
 
 16
 On June 14, 1991, both firms moved to withdraw and a copy of the motion was mailed to Ball. Ball did not oppose the motion.
 
 
 17
 On June 26, 1991, the court granted the motion to withdraw and a copy of its order was sent to Ball.
 
 
 18
 On July 12, 1991, Taubman wrote Ball that he was leaving Dunnells, Duvall. In his letter, he stated that he would represent him but that it was necessary for Ball to sign the form enclosed giving Taubman the right to get Ball's files from Dunnells, Duvall. Ball signed and mailed it to Taubman.
 
 
 19
 On July 19, 1991, Dunnells, Duvall wrote to Ball stating:
 
 
 20
 Re: Clarendon Ltd. v. Eddie W. Foster, et al.
 
 
 21
 The Court has permitted us to withdraw from the litigation. You are now not represented in that case. We urge you to take the necessary steps to get new counsel so that your rights in the litigation will be protected.
 
 
 22
 On July 26, 1991, Boult, Cummings also wrote Ball that its motion to withdraw had been granted and that the Order further indicated that on August 1, 1991, a hearing was set on the motion to dismiss before Magistrate Judge Sandidge, who was assigned to hear all pre-trial matters.
 
 The letter stated:
 
 23
 It is important that you immediately inform your new attorney of the enclosed matters if you have one, or to advise the Court of your intent to represent your own interests in this matter by calling the Clerk of the Court as soon as possible. Failure to do so may constitute a default on your part in this action.
 
 
 24
 On July 26, 1991, Boult, Cummings filed a Notice of Remittance with the court indicating that they had informed Ball of the Order and the August 1, 1991, hearing date. On August 1, 1991, no one appeared on Ball's behalf.
 
 
 25
 On August 8, 1991, Dunnells, Duvall sued Ball for fees. The case was captioned Stephen W. Porter, et al. v. Roger Lee Ball, ("the Dunnells, Duvall" litigation).[3]
 
 
 26
 On September 10, 1991, the Magistrate Judge recommended that Dunnells, Duvall's motion on Ball's behalf to dismiss or transfer venue be denied for nonappearance. On October 10, 1991, the District Court adopted the Report and Recommendation of the Magistrate Judge and ordered denial of the motion. A copy of the Report and Recommendation and the District Court's Order was sent to Ball.
 
 
 27
 On September 17, 1991, the Report and Recommendation of the Magistrate Judge mailed by the court to defendant Coal River Management, Inc., Ball's company, was returned by the Postal Service marked "refused."
 
 
 28
 On November 13, 1991, the plaintiffs filed for an entry of default.
 
 
 29
 On November 14, 1991, Dunnells, Duvall contacted Ball to inform him that members of the firm had met with Taubman in relation to the Dunnells, Duvall litigation and Taubman told them that the $40,000 he got from Ball was for payment of a prior debt and not for attorney fees. The firm members stated that they needed more information from Ball before they could consider his proposal to dismiss their case.
 
 
 30
 In this letter they again strongly urged Ball to retain counsel for the Clarendon litigation and stated they would cooperate fully. They told him that his files were still in their office and available to him at any time. They enclosed a copy of the Magistrate Judge's Report and Recommendation and the District Court's Order denying the Motion to Dismiss.
 
 The letter stated further:
 
 31
 I must reiterate our prior advice to you to immediately obtain counsel to represent your interests in the Clarendon litigation. We would expect that your new counsel would seek to have the motion to dismiss and to transfer venue considered on the merits.
 
 
 32
 Ball did not respond to this letter and on December 18, 1991, Dunnells, Duvall wrote to Ball again stating:
 
 
 33
 Re: Clarendon Ltd. v. Eddie W. Foster, et al.
 
 
 34
 In connection with our effort to clarify the basic facts around this billing situation, we repeat our requests for information, which were outlined in our statement of November 18.
 
 
 35
 In addition, we reiterate our advice to you to retain counsel to represent your interests in the Clarendon litigation in Tennessee. You are unrepresented in that litigation and risk a default being entered against you unless you make arrangements to appear.
 
 
 36
 On December 27, 1991, default was entered by the Clerk of Court.
 
 
 37
 On December 28, 1991, Ball retained Bernard R. Corbett as his attorney in the fee litigation Dunnells, Duvall initiated.
 
 
 38
 On January 10, 1992, the plaintiffs filed a Motion for Default Judgment. Ball received a notice of the default and, on or before January 15, 1992, the motion for default judgment.
 
 
 39
 On January 22, 1992, the court issued a Show Cause Order and set the hearing date on the motion for default judgment for January 31, 1992. On the same day Dunnells, Duvall sent Ball another letter repeating its admonition and concern that Ball retain counsel for the Clarendon litigation and noting that it had "advised your new counsel [for the Dunnells, Duvall litigation] that a request for entry of default judgment had been filed [in the Clarendon litigation], and therefore you must act promptly." The "cc" line on the letter read "Bernard R. Corbett, Esq."
 
 
 40
 Corbett alleges that on the morning of January 31, 1992, he "serendipitously" placed a telephone call to the court to inquire about the status of the case. He was told that a hearing was scheduled for that day and that he should appear.
 
 
 41
 The same morning he also telephoned Matt Sweeney, counsel for the plaintiffs. He told Sweeney that he was from out of town, that Ball had just retained him in the Clarendon action, and that he could not appear on such short notice. He asked if Sweeney would agree to reschedule and Sweeney said he would not.
 
 
 42
 Corbett also telephoned Ball and told him that the hearing was set for that morning. Ball alleges that he knew nothing about the hearing until this telephone call.
 
 
 43
 The hearing went forward as scheduled. Neither Corbett nor anyone else appeared on Ball's behalf. The court granted the plaintiffs' motion for default judgment, ordering compensatory damages in the amount of $199,940.51 and punitive damages in the amount of $250,000.00.
 
 
 44
 On February 7, 1992, the plaintiffs moved to amend the final judgment because of a clerical error and on February 13, 1992, the court granted the motion.
 
 
 45
 On February 14, 1992, Ball filed a motion for Relief from Judgment pursuant to Fed.R.Civ.P. 60(b). This motion was filed within the time for filing a motion to alter or amend the judgment pursuant to Fed.R.Civ.P. 59(e).
 
 
 46
 On April 22, 1992, the court granted a second motion to amend the judgment to correct the listing of the "evidence" on which the Judge relied to issue the order. The evidence consisted of the complaint, the motion for default judgment, the memorandum in support thereof, the exhibits, and the transcripts of the bankruptcy testimony of Ball and Foster.
 
 
 47
 On April 23, 1992, the order to amend was issued and Ball's 60(b) motion for relief from judgment was denied. The court held that Ball's actions towards the court constituted willful misconduct and negligence and that Ball had not shown that he had a meritorious defense. On May 6, 1992, Ball filed a notice of appeal from the District Court's order.
 
 II.
 
 48
 Ball contends that the district court abused its discretion when it denied his post-judgment motion.
 
 
 49
 Ball states he relied on the advice of Taubman, his attorney, and that Taubman's misconduct and lack of guidance were the reasons for his inaction. Ball states that his motion should be granted because he has a meritorious defense and he intended no disrespect for the court. In addition, he states that there is no factual or legal basis for the award of punitive damages.
 
 
 50
 Clarendon, in its response, states that the court did not abuse its discretion, that Ball has no meritorious defense, and that his inaction in this case constitutes willful, culpable conduct and negligence. It also questions the jurisdiction of this court to review the final judgment entered January 31, 1992, or the amended judgment entered April 23, 1992, because Ball did not file a notice of appeal timely as required by Fed.R.App.P. 4(a).
 
 III. JURISDICTION
 
 51
 On December 27, 1991, default judgment was entered against Ball and on February 14, 1992, Ball filed a motion pursuant to Fed.R.Civ.P. "60, 62 and 6" for relief from the entry of default and from the default judgment. On appeal Ball contends that his motion was brought pursuant to Fed.R.Civ.P. 59(e) and not 60(b) as originally styled.
 
 
 52
 Whether Ball's motion is properly styled as 59(e) or 60(b) is significant because it determines whether this court has appellate jurisdiction to review the district court's final judgment, or only to review the order denying Ball's motion to set aside the default and the default judgment.
 
 
 53
 "To preserve the original judgment for appeal and review on the merits, [the defendant] had to pursue two paths simultaneously: [his] Rule 60(b) motion before the district court, and [his] notice of appeal to this court...." United States v. One Urban Lot, 882 F.2d 582 (1st Cir.1989).
 
 
 54
 The plaintiffs charge that the court's jurisdiction was not properly invoked because Ball's notice of appeal was not filed timely pursuant to Fed.R.App.P. 4(a). Lindsey v. Perini, 409 F.2d 1341 (6th Cir.1969). Rule 4(a) requires a notice of appeal to be filed within 30 days of the entry of judgment. This time period "ceases to run, however, if any one of several post-judgment motions is filed with the District Court." Smith v. Hudson, 600 F.2d 60, 62 (6th Cir.), cert. dismissed, 444 U.S. 986 (1979). This includes a motion pursuant to Fed.R.Civ.P. 59(e) seeking to alter or amend a judgment, McDowell v. Dynamics Corp. of America, 931 F.2d 380, 382 (6th Cir.1991), but does not include a motion pursuant to Fed.R.Civ.P. 60(b).
 
 Rule 59(e) provides:
 
 55
 A motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment.
 
 
 56
 Fed.R.Civ.P. 59(e).
 
 Rule 60(b) provides, in pertinent part:
 
 57
 On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect ... A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation....
 
 
 58
 Fed.R.Civ.P. 60(b).
 
 
 59
 The plaintiffs submit that the motion Ball filed on February 14, 1992, was a Rule 60(b) motion. They charge that because Ball did not file a notice of appeal timely, the original judgment cannot be reviewed on the merits. Sutherland v. ITT Continental Baking Co., Inc., 710 F.2d 473, 475 (8th Cir.1983).
 
 
 60
 Courts are split on the issue of what factors should be considered in determining whether a post-judgment motion arises under 59(e) or 60(b). Some have held that any post-judgment motion filed within ten days after entry of judgment is considered a 59(e) motion. See, e.g., Harcon Barge Company, Inc. v. D & G Boat Rentals, Inc., 784 F.2d 665, 668 (5th Cir.), cert. denied, 479 U.S. 930 (1986) ("If a motion falls within the scope of Rule 59(e), and it is timely served within ten days after entry of judgment as that rule requires, then the court must consider it as a Rule 59(e) motion for the purposes of Fed.R.App.P. 4(a)(4), regardless of how it is styled."); Moy v. Howard University, 843 F.2d 1504, 1505-06 (D.C.Cir.1988); Charles v. Daley, 799 F.2d 343, 347 (7th Cir.1986). Ball's motion was filed within the time period for filing a 59(e) motion.
 
 
 61
 Other courts consider the substance of the motion. Taumby v. U.S., 919 F.2d 69, 71 (8th Cir.1990); Echevarria-Gonzalez v. Gonzalez-Chapel, 849 F.2d 24, 25-27 (1st Cir.1988); Gulf Coast Fans, Inc. v. Midwest Electronics Importers, Inc., 740 F.2d 1499, 1507 (11th Cir.1984).[4]
 
 
 62
 Moore's Federal Practice states that "[a]ny motion that draws into question the correctness of a judgment is functionally a motion under Civil Rule 59(e), whatever its label." 9 J.Moore Federal Practice p 204.12 at 4-67 (1985). Virtually every circuit court has followed the reasoning of Moore.[5] See, e.g., Dove v. Codesco, 569 F.2d 807, 809 (4th Cir.1978), holding that a motion which "calls into question the correctness of a judgment should be treated as a motion under Rule 59(e), however it is styled."
 
 
 63
 Although this circuit has not specifically dealt with this issue, in Smith, 600 F.2d at 62, supra, we held that it "was proper for the District Court to entertain a motion to alter or amend a judgment under Rule 59(e) even though it was filed prior to the actual entry of judgment." This same reasoning permits the determination that the motion filed as a Rule 60(b) motion, but filed within the time for filing a 59(e) motion, should be entertained as a 59(e) motion.
 
 
 64
 The Smith court held further that "a motion which asks a court to vacate and reconsider, or even to reverse its prior holding, may properly be treated under Rule 59(e) as a motion to alter or amend a judgment." Id.[6]
 
 
 65
 We find that the post-judgment motion of Ball was functionally a motion to alter or amend the judgment. Accordingly this court has jurisdiction to review both the denial of the motion to vacate the judgment and the underlying default judgment.
 
 IV. STANDARD OF REVIEW
 
 66
 "Trials on the merits are favored in the federal courts, and a 'glaring abuse' of discretion is not required for reversal of a court's refusal to relieve a party of the harsh sanction of default." Berthelsen v. Kane, 907 F.2d 617, 620 (6th Cir.1990) (quoting United Coin Meter Co., Inc. v. Seaboard Coastline R.R., 705 F.2d 839 (6th Cir.1983)). "Judgment by default is a drastic step which should be resorted to only in the most extreme cases." United Coin at 845-46.
 
 
 67
 The issue of whether the entry of a default or a default judgment should be set aside is a matter committed to the sound discretion of the trial judge. Amernational Industries, Inc. v. Action-Tungsram, Inc., 925 F.2d 970, 975 (6th Cir.), cert. denied, --- U.S. ----, 111 S.Ct. 2857 (1991); U.S. On Behalf Of Time Equipment Rental v. Harre, 983 F.2d 128 (8th Cir.1993). Under Fed.R.Civ.P. 55(c) a judgment of default may be set aside for the reasons listed in Fed.R.Civ.P. Rule 60(b) and the discretion of the trial judge entails a consideration of factors pursuant to this rule. United Coin, 705 F.2d 839 (6th Cir.1983).
 
 The three factors to be considered are:
 
 68
 1. Whether the plaintiff will be prejudiced;
 
 
 69
 2. Whether the defendant has a meritorious defense; and
 
 
 70
 3. Whether culpable conduct of the defendant led to the default.
 
 
 71
 United Coin at 845 (citing Farnese v. Bagnasco, 687 F.2d 761, 764 (3d Cir.1982)).
 
 A. PREJUDICE TO THE PLAINTIFF
 
 72
 The plaintiffs charge that they would be prejudiced by reopening this case due to the expense and delay it would cause. "Mere delay in satisfying a plaintiff's claim ... is not sufficient prejudice to require denial of a motion to set aside a default judgment." Id. "To establish prejudice, the plaintiff must show that the delay will result in the loss of evidence, increased difficulties in discovery, or greater opportunities for fraud and collusion." Berthelsen v. Kane, 907 F.2d 617, 621 (6th Cir.1990). Although plaintiffs do not directly assert any of the above, they state that the court should find in their favor because Ball has no meritorious defense and because of his willful and reckless misconduct.
 
 B. MERITORIOUS DEFENSE
 
 73
 The party moving to set aside a default judgment must do more than merely deny the non-moving parties' allegations in order to establish a meritorious defense. "Although in an answer general denials normally are enough to raise a meritorious defense, the moving party on a motion to reopen a default must support its general denials with some underlying facts." Sony Corp. v. Elm State Electronics, 800 F.2d 317, 320-21 (2d Cir.1986).
 
 
 74
 [I]f any defense relied upon states a defense good at law, then a meritorious defense has been advanced." United Coin at 845. A defense is sufficient if it contains "even a hint of a suggestion which, proven at trial, would constitute a complete defense." INVST Financial Group v. Chem-Nuclear Systems, 815 F.2d 391 (6th Cir.1987). A mere denial of the claims asserted in the complaint, and nothing more, does not amount to even a "hint of a suggestion" that the defendant can dispute the allegations in the complaint. Smith v. Commissioner, 926 F.2d 1470, 1480 (6th Cir.1991).
 
 
 75
 Review of Ball's proposed answer and affidavits reveals only conclusory and general denials of wrongdoing, not facts on which a defense would depend. Ball did not address any means by which he would dispute the allegations in the complaint other than to deny them generally. A general denial is not sufficient to demonstrate a meritorious defense and the district court did not abuse its discretion in so holding.
 
 C. CULPABLE CONDUCT
 1. Ball's Conduct
 
 76
 Ball contends he did not appear at the hearing on January 31, 1992, because he only learned of it that morning. He states further that his inaction was the result of mistake and inadvertence, and not a willful refusal to abide by the processes of the court amounting to culpable conduct.
 
 
 77
 On April 23, 1992, the court filed a Memorandum accompanying its Order denying Ball's motion to set aside the default judgment, stating that "even if Ball should not be faulted for failing to appear [on January 31, 1992], his failure to respond to the earlier motions and Orders of this Court cannot be attributed to accident." The court stated further that "Ball had notice of every action taken against him and was informed repeatedly by his former counsel that his interests were not being represented in the case." The court concluded that "Ball is guilty of a pattern of repeated and unexcused failures to respond to motions filed by the plaintiffs and Orders issued by the Court."
 
 
 78
 In its Memorandum the court cited Smith v. Commissioner, 926 F.2d 1470, 1479 (6th Cir.1991) which held that culpable conduct is to be considered when determining whether to set aside a default judgment. However, Smith leaves open the definition of "culpable."
 
 
 79
 The court, citing the Seventh Circuit's definition of "culpable" in Ellingsworth v. Chrysler, 665 F.2d 180, 185 (7th Cir.1981), as "willful misconduct, carelessness or negligence" and distinguishable from "honest mistake," held that Ball's behavior was culpable and that he was, therefore, not entitled to relief from judgment.
 
 
 80
 This finding is supported by the record and the exhibits. Ball was apprised of each hearing by the court or by letter from law firms which he had retained, and which had withdrawn from his case. We find no honest mistake, inadvertence or excusable neglect.
 
 2. Attorney's Conduct
 
 81
 Ball asserts further that his actions were the result of mistaken trust in his attorney, Morton Taubman. The court held that "Ball's excuse that Taubman was apparently incompetent is insufficient to persuade the Court that it should set aside its default judgment" and we agree.
 
 
 82
 The Supreme Court has held that a client is bound by his lawyer's acts even if those acts cause dismissal of the case or entry of default judgment. Link v. Wabash Railroad Co., 370 U.S. 626, 82 S.Ct. 1386 (1962). "Petitioner voluntarily chose this attorney as his representative in the action and he cannot now avoid the consequences of the acts or omissions of this freely selected agent." Id. at 633-34, 82 S.Ct. at 1390.
 
 
 83
 Despite this unequivocal language, this court has been "extremely reluctant to uphold the dismissal of a case or the entering of a default judgment merely to discipline an errant attorney...." Shepard Claims Service, Inc. v. William Darrah & Associates, 796 F.2d 190, 195 (6th Cir.1986).
 
 
 84
 However, here there are no factors which favor reversing the district court. This is "not a case where the district court immediately dismissed a case for failure to comply with a single court order." Buck v. U.S. Dept. of Agriculture, F.H.A., 960 F.2d 603, 608 (6th Cir.1992.)
 
 
 85
 The record indicates that Ball had notice as early as May, 1991, that Taubman's actions on his behalf commanded attention. Dunnells, Duvall filed a motion to withdraw for non-payment of its retainer and costs, even though Ball had written Taubman two checks, each in the amount of $20,000, one payable to Taubman and one to Dunnells, Duvall. This should have put Ball on notice to ask Taubman about the money, and to be concerned about legal representation. Further, Ball was told by Dunnells, Duvall that his files were never picked up.
 
 
 86
 If this were not enough, there was further inaction on the part of Ball. Ball had received 1.) a notice that his motion to dismiss had been denied for inaction, 2.) letters from the court and from Dunnells, Duvall that hearings were scheduled, 3.) notices that no one had entered an appearance on his behalf at those hearings, 4.) a notice that a motion for default was filed and granted, and 5.) notices that a motion for default judgment had also been filed, a hearing set and the motion granted. Ball indicated to the court that he was in touch with Taubman almost daily throughout the relevant period at issue.
 
 
 87
 Ball had retained Taubman over the past ten years, had participated in multiple litigations, and had knowledge of the necessity to comply with the procedures of the court.
 
 
 88
 This is not a case of mere inadvertence on the part of counsel in missing a deadline for which the client is prejudiced. Taubman was derelict in his duty to Ball but Ball cannot hide his own misconduct, inaction and negligence by attributing it solely to his attorney.
 
 
 89
 "[W]hen either derelict counsel or new counsel moves quickly to cure the delinquency this court is more likely to give the non-complying party another chance, even when no excusable neglect is found." Buck at 609. However, no such mitigating factor exists in this case. New counsel, Corbett, was retained by Ball for the Dunnells, Duvall litigation on December 28, 1990, a month before the default judgment hearing in this case. The Dunnells, Duvall litigation grew out of the Clarendon litigation, and Ball would have had to explain this case to Corbett before he could mount an adequate defense.
 
 
 90
 In addition, Corbett received a copy of the January 22, 1992, letter from Dunnells, Duvall to Ball stating that a request for entry of default had been filed. He did not act until the morning of the scheduled hearing, and then did not appear himself, or send anyone else to appear on Ball's behalf.
 
 
 91
 Under these circumstances, we do not find that the district court abused its discretion.
 
 V. DAMAGES
 
 92
 The district court awarded compensatory and punitive damages to the plaintiffs. Compensatory damages were awarded in the amount of the loan made to the defendants, and this award is affirmed. In addition, the court determined that the loan had been fraudulently obtained due to material misrepresentations and omissions and awarded punitive damages in the amount of $250,000.
 
 
 93
 Under Tennessee law punitive damages may be awarded if the wrongdoer's action constitutes fraud, malice, oppression or gross negligence. Bland v. Smith, 197 Tenn. 683, 277 S.W.2d 377 (1955). The purpose of punitive damages is not to compensate the plaintiff but to punish the wrongdoer and others from committing similar wrongs in the future. Huckeby v. Spangler, 563 S.W.2d 555, 558-59 (Tenn.1978).
 
 
 94
 The Tennessee Supreme Court recently listed the factors to be considered by the finder of fact in determining the amount, if any, to be awarded as punitive damages:
 
 
 95
 (1) The defendant's financial affairs, financial condition, and net worth;
 
 
 96
 (2) The nature and reprehensibility of defendant's wrongdoing, for example
 
 
 97
 (A) The impact of defendant's conduct on the plaintiff, or
 
 
 98
 (B) The relationship of defendant to plaintiff;
 
 
 99
 (3) The defendant's awareness of the amount of harm being caused and defendant's motivation in causing the harm;
 
 
 100
 (4) The duration of defendant's misconduct and whether defendant attempted to conceal the conduct;
 
 
 101
 (5) The expense plaintiff has borne in the attempt to recover the losses;
 
 
 102
 (6) Whether defendant profited from the activity, and if defendant did profit, whether the punitive award should be in excess of the profit in order to deter similar future behavior;
 
 
 103
 (7) Whether, and the extent to which, defendant has been subjected to previous punitive damage awards based upon the same wrongful acts;
 
 
 104
 (8) Whether, once the misconduct became known to defendant, defendant took remedial action or attempted to make amends by offering a prompt and fair settlement for actual harm caused; and
 
 
 105
 (9) Any other circumstances shown by the evidence that bear on determining the proper amount of the punitive award.
 
 
 106
 Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901-02 (Tenn.1992).
 
 
 107
 The Court, in Hodges, further held that before a court makes an award of punitive damages, the judge shall clearly set forth the reasons for the amount in findings of fact and conclusions of law demonstrating a consideration of all the factors. Id.
 
 
 108
 The plaintiffs requested $500,000 in punitive damages, and the court, stating no reasons, awarded $250,000. The court did not set forth findings of fact and conclusions of law as to the specific factors that it considered in arriving at the amount of punitive damages.
 
 
 109
 Accordingly, we remand the case to the district court for its decision on punitive damages in accordance with Tennessee law.
 
 VI. CONCLUSION
 
 110
 We find no abuse of discretion in the denial of the post-judgment motion or in the granting of the default judgment. We AFFIRM on these issues. We REMAND the case to the district court to determine the amount, if any, of punitive damages.
 
 
 
 *
 John M. Manos, United States District Judge for the Northern District of Ohio, sitting by designation
 
 
 [1]
 Plaintiff Clarendon, Ltd., was a Swiss corporation with its principal place of business in Connecticut; plaintiff Clarendon Coal, Inc., was a Delaware corporation with its principal place of business in Connecticut. Defendants Foster, Coal River Management, Inc., and Ball were citizens of West Virginia, and Coal River Management had its principal place of business in West Virginia
 
 
 [2]
 Foster and Coal River Management did not enter an appearance in the District Court. Default judgment was entered against them and neither appeals
 
 
 [3]
 District of Columbia Superior Court case 91-CA 10217. Stephen W. Porter is the named partner/plaintiff in the case
 
 
 [4]
 However, in Gulf Coast Fans the Eleventh Circuit held that the Rule 60(b) motion was best styled as a motion to set aside the default judgment and could not be styled as a Rule 59(e). They determined that there was no jurisdiction to review the underlying judgment
 
 
 [5]
 See also Cosgrove v. Smith, 697 F.2d 1125, 1127-28 (D.C.Cir.1983); Foman v. Davis, 292 F.2d 85, 87 (1st Cir.1961), rev'd on other grounds, 371 U.S. 178 (1962); Lyell Theatre Corp. v. Loews Corp., 682 F.2d 37, 41 (2d Cir.1982); Rankin v. Heckler, 761 F.2d 936, 942 (3d Cir.1985); Harcon Barge Co., Inc. v. D & G Boat Rentals, Inc., 784 F.2d 665, 669-70 (5th Cir.), cert. denied, 479 U.S. 930 (1986); Western Industries, Inc. v. Newcor Canada Ltd., 709 F.2d 16, 17 (7th Cir.1983) (per curiam); Seshachalam v. Creighton University School of Medicine, 545 F.2d 1147, 1147 (8th Cir.1976), cert. denied, 433 U.S. 909 (1977); Sea Ranch Association v. California Coastal Zone Conservation Commissions, 537 F.2d 1058, 1061 (9th Cir.1976); United States v. Sanger 24' Spectra Boat, 738 F.2d 1043, 1046 (9th Cir.1984); Miller v. Leavenworth-Jefferson Electric Cooperative, Inc., 653 F.2d 1378, 1380 (10th Cir.1981)
 
 
 [6]
 The plaintiffs are arguing for the victory of form over substance, saying that the defendant should be bound by the number it puts on its motion regardless of the time of the filing. See, e.g., Gulf Coast Fans at 1507. We decline to follow this reasoning