16 F.3d 1221
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 TRUSTEES OF the DETROIT CARPENTERS FRINGE BENEFIT FUNDS, a
voluntary unincorporated association, Plaintiffs-Appellees,
v.
William MANNINEN, d/b/a W.M.C.I., Inc., d/b/a William
Manninen Carpentry; William Manninen Carpentry,
W.M.C.I., Inc., Defendants,
and
Donna Manninen, d/b/a W.M.C.I., Inc., d/b/a William Manninen
Carpentry, Defendant-Appellant.
 No. 92-1762.
 United States Court of Appeals, Sixth Circuit.
 Jan. 24, 1994.
 
 Before: JONES and SILER, Circuit Judges; and RUBIN, District Judge.*
 NATHANIEL R. JONES, Circuit Judge.
 
 
 1
 Defendant-Appellant Donna Manninen appeals the district court's denial of both her Motion to Set Aside Default Judgment and her Motion for Reconsideration. Because we find that Manninen's default was the result of an honest mistake, we reverse the decision of the lower court, set aside the default judgment and remand the case to the lower court for consideration on the merits.
 
 I.
 
 2
 Appellant Manninen is a housewife. Her husband, William, is a carpenter and building contractor. He conducted business under the name William Manninen Carpentry until April 1987, at which time he incorporated his business as William Manninen Carpentry, Inc. ("W.M.C.I.").
 
 
 3
 Mr. Manninen, a union member, named Appellant as an officer of W.M.C.I. to avoid what he mistakenly believed to be union restrictions against members holding positions as principals in contracting companies. However, Mrs. Manninen was not by any means an active participant in the company. The extent of Mrs. Manninen's contact with the business following its incorporation consisted of infrequent part-time clerical work in the office, including answering telephones, running errands, and occasionally signing payroll checks. Manninen's contact with her husband's former business, William Manninen Carpentry, was even more attenuated. She had no contact with this business in any capacity other than as the wife of the sole proprietor.
 
 
 4
 William Manninen Carpentry entered into a collective bargaining agreement with the Detroit Carpenters Fringe Benefit Funds which required that payments be made for benefits earned by employees covered by the agreement. W.M.C.I. did not enter into such an agreement, but instead made voluntary payments on behalf of its employees who were members of the union.
 
 
 5
 In 1990, an audit, conducted by the Trustees of the Carpenters Fringe Benefit Funds ("Trustees" or "Plaintiffs"), of the books for William Manninen Carpentry and W.M.C.I., indicated that the Trustees were owed in excess of $120,000 by the two companies. Disagreement regarding the amount owed resulted in the non-payment of the debt. In October 1990, a complaint was filed by the Trustees to collect the amount owed. Due to her position as an officer of W.M.C.I., Mrs. Manninen was named in this suit. However, despite her legal accountability as a named defendant, Manninen had no actual involvement in the legal proceedings. Throughout the development of the lawsuit, Manninen, relying upon her husband's assurances that he would "take care of it," resisted getting involved in the case. Manninen Br. at 5.
 
 
 6
 Negotiations began between Mr. Manninen and the plaintiffs to determine an accurate computation of the amount owed and to make arrangements for a payment schedule. While these negotiations were pending, Plaintiffs entered defaults against all of the defendants and filed motions for default judgments. These motions were premised upon Mr. Manninen's failure to formally respond to the suit. Recognizing the increased gravity of the matter, Mr. Manninen concluded that counsel was necessary, and requested representation from his corporate attorney, Peter Leto.
 
 
 7
 Following the retention of Mr. Leto, a settlement agreement was negotiated. As a term of the agreement, Plaintiffs demanded a second mortgage on the Manninen home as security. Mr. Manninen, believing this to be an unacceptable term, terminated the services of Mr. Leto and resumed negotiations with Plaintiffs without legal representation.
 
 
 8
 A hearing on the plaintiffs' entry of default was scheduled, and on September 19, 1991, a default judgment was entered for the plaintiffs in the amount of $75,854.90 plus costs, interest, and attorney's fees. The Manninens were not represented at the hearing, despite the fact that they had been notified of its occurrence. When Mr. Manninen received notice of the default judgment in the mail, he finally informed his wife of the critical nature of the proceedings. She, at this point, contacted a lawyer, and on October 31, 1991, filed a motion to set aside the default judgment. The trial judge denied the motion. A motion for reconsideration which was subsequently filed by Appellant was similarly denied. This appeal followed.
 
 II.
 
 9
 This court reviews a lower court's entry of a default judgment for an abuse of discretion. United Coin Meter v. Seaboard Coastline R.R., 705 F.2d 839, 843 (6th Cir.1983). However, in conducting this review we note that "[t]rials on the merits are favored in the federal courts, and a 'glaring abuse' of discretion is not required for reversal of a court's refusal to relieve a party of the harsh sanction of default." Berthelsen v. Kane, 907 F.2d 617, 620 (6th Cir.1990) (quoting United Coin, 705 F.2d at 846). Adoption of this modified standard is primarily motivated by our appreciation of the fact that "[j]udgment by default is a drastic step which should be resorted to only in the most extreme cases. Where default results from an honest mistake rather than willful misconduct, carelessness or negligence there is especial need to apply Rule 60(b) liberally." United Coin, 705 F.2d at 845. Accordingly, in the instant case, our review is influenced by an appreciation for these legitimate policy considerations and is conducted with an eye for a simple, as opposed to a glaring, abuse of discretion.
 
 III.
 
 10
 This court's set aside of a default judgment is governed by Rules 55(c) and 60(b) of the Federal Rules of Civil Procedure. We addressed the practical application of these two rules in United Coin, which established three factors that a court should examine when reviewing the entry of a default judgment. Relief from a default judgment should be granted if: 1) the defendant did not engage in culpable behavior that led to the default; 2) the defendant presented a meritorious defense; and 3) the plaintiff would not be prejudiced by the court's grant of relief.[1] Id. at 845. See also INVST Financial Group v. Chem-Nuclear Systems, 815 F.2d 391, 398-99 (6th Cir.), cert. denied 484 U.S. 927 (1987); Amernational Indus. v. Action-Tungsram, 925 F.2d 970, 976 (6th Cir.), cert. denied 111 S.Ct. 2857 (1991).
 
 
 11
 Clarification of the application of these three factors was recently provided in Waifersong, Ltd. Inc. v. Classical Music Vending, 976 F.2d 290, 292 (6th Cir.1992). Waifersong instructs that in cases involving the entry of a default judgment, the culpable conduct factor in United Coin is not to be balanced against the remaining two factors, but rather all three requirements must be satisfied independently.
 
 
 12
 When asked to set aside an entry of default, a court considers the first factor, defendant's culpability, in the general context of determining whether a petitioner is deserving of equitable relief. But when it is a judgment the defendant is seeking to avoid, the specific requirements of Rule 60(b) narrow the scope of the court's equitable inquiry. When relief is sought under Rule 60(b)(1), the culpability factor is framed in terms of "mistake, inadvertence, surprise, or excusable neglect." Furthermore, while it may be argued that the three factors are to be "balanced" by the court in determining whether to set aside an entry of default, balancing is demonstrably inappropriate when a court initially proceeds, as in the instant case, under Rule 60(b)(1). That is because the rule mandates that a defendant cannot be relieved of a default judgment unless he can demonstrate that his default was the product of mistake, inadvertence, surprise, or excusable neglect.
 
 
 13
 Id. (footnote omitted).
 
 
 14
 Turning to the first prong of United Coin, we find that Donna Manninen's failure to address the lawsuit against her was not a result of culpable conduct. Culpable conduct is " 'willful misconduct, carelessness or negligence' and [is] distinguishable from 'honest mistake.' " Clarendon, Ltd. v. Foster, 1993 WL 339703, at * 8 (6th Cir. Sept. 2, 1993) (quoting Ellingsworth v. Chrysler, 665 F.2d 180, 185 (7th Cir.1981)). However, in failing to confront the lawsuit Mrs. Manninen did not willfully neglect the legal proceedings against her. Instead she relied upon her husband's plausible representations that he would take care of the suit. Under the particular facts of this case, such reliance suffices to create excusable neglect. "[I]t is not unusual for one defendant to rely on one of the other defendants to look after the appearance, answer, etc., at the outset of the suit." Standard Grate Bar Co. v. Defense Plant Corp., 3 F.R.D. 371, 372 (M.D.Pa.1944).
 
 IV.
 
 15
 A finding that Mrs. Manninen's inattention to the suit was the result of excusable neglect does not conclude our discussion. The second prong of the United Coin analysis, requires that in addition to not engaging in culpable conduct. Mrs. Manninen must present meritorious defenses before the default judgment may be set aside.
 
 
 16
 The merit of a proposed defense is not appraised with respect to the likelihood of its success. Instead a court must determine whether the proposed defense "contains 'even a hint of a suggestion' which, proven at trial would constitute a complete defense." INVST, 815 F.2d at 399. If the proposed defense does, then it will constitute a meritorious defense for purposes of Rule 60(b). See also Smith v. Commissioner, 926 F.2d 1420, 1480 (6th Cir.1991). This liberal rule does not permit a party opposing a default judgment to merely deny the plaintiff's allegations, however. Smith, 926 F.2d at 1480.
 
 
 17
 Manninen presents several defenses which she claims are meritorious. The district court, in its consideration of Manninen's Motion to Set Aside Default Judgment, however, found that she had not presented any such defenses. J.A. at 55. In reaching this conclusion, the court paid particular attention to the fact that Mrs. Manninen had been named as an officer of W.M.C.I. to avoid what her husband mistakenly believed to be a union regulation. J.A. at 49. The district court's observation of the fact that Mrs. Manninen was named as an officer to circumvent union regulations is an inappropriate focus for an inquiry into the presence of a meritorious defense. The merits of the proposed defense, and not the prior motivations of the defendant, are the paramount concern under the second prong of the United Coin analysis.
 
 
 18
 Acknowledging this appropriate focus, we now turn to the merit of Manninen's proposed defenses. She first asserts that she is not personally liable for debts incurred while her husband conducted business under the sole proprietorship, William Manninen Carpentry.[2] In addition, she asserts that even those debts incurred during her tenure as a corporate officer should not be attributed to her in that there is no legitimate reason to pierce the corporate veil, as she is not a controlling person, nor is she an alter ego of the corporation. See generally CPC Intern., Inc. v. Aerojet-General Corp., 777 F.Supp. 549, 574 (W.D.Mich.1991) (discussing doctrine of piercing the corporate veil and alter ego defense); United States v. WRW Corp., 778 F.Supp. 919, 924 (E.D.Ky.1991) (same), aff'd, 986 F.2d 138 (6th Cir.1993). These defenses, if supported by facts at trial, will be meritorious. Accordingly, Mrs. Manninen has satisfied the second prong of the United Coin test by presenting a proposed defense that "contains ' "even a hint of a suggestion" which, [if] proven at trial would constitute a complete defense.' " INVST, 815 F.2d at 399.
 
 IV.
 
 19
 Finally, we must consider whether granting relief to Mrs. Manninen will result in prejudice to the Trustees. Waifersong, 976 F.2d at 292. To succeed under this prong the plaintiffs must show something more than just prejudice as a function of postponement. In other words, mere delay in the resolution of the suit is not sufficient to constitute prejudice. INVST, 815 F.2d at 398 ("[D]elay alone is not a sufficient basis for establishing prejudice"); United Coin, 705 F.2d at 845 ("Mere delay in satisfying a plaintiff's claim, if it should succeed at trial, is not sufficient prejudice to require denial of a motion to set aside a default judgment").
 
 
 20
 In the instant case Plaintiffs have not alleged that the set aside of the default judgment would cause them any prejudice. Moreover, at no point in the transcript of the Hearing on the Motion to Set Aside Default Judgment, J.A. at 134-142, nor in their brief in opposition to the Motion To Set Aside Default Judgment, J.A. at 36-40, do the Trustees allege that they will be prejudiced by the set aside of the judgment. Consequently, we find that no undue prejudice would result from the set aside of the default judgment.
 
 V.
 
 21
 For the foregoing reasons we find that the lower court abused its discretion by entering a default judgment against Mrs. Manninen. Accordingly, we set aside the lower court's entry of default judgment against Mrs. Manninen and remand the case for consideration on the merits.
 
 
 22
 SILER, Circuit Judge, dissenting.
 
 
 23
 I respectfully dissent, for I do not feel that the district court abused its discretion in this matter.
 
 
 24
 Although as a district judge, I may have handled the matter differently, this court should not disturb the decision of the district court in refusing to set aside the default judgment, unless there was an abuse of discretion. Marshall v. Monroe & Sons, Inc., 615 F.2d 1156, 1160 (6th Cir.1980). As the majority opinion so aptly states, it is more difficult to get the court to set aside a default judgment instead of a default, but defendant took no action to set aside the default.
 
 
 25
 The district court here thoroughly considered the factors of absence of culpable conduct and meritorious defense, see Waifersong, Ltd. v. Classic Music Vending, 976 F.2d 290, 292 (6th Cir.1992), and found that the defendant failed to demonstrate either of those elements. Although I am inclined to feel, as does the majority opinion, that defendant has a meritorious defense, I think that the defendant was culpable. Default judgment was not entered until four months after the defendant was first served with notice that she was in default. During those four months, an additional three notices of default and a notice for a hearing on the motion for default judgment were sent to the defendant.
 
 
 26
 It was not until after the hearing on the default judgment and its entry that the defendant made any effort to have the judgment set aside, and then the motion to set it aside was filed approximately six weeks after entry of the judgment.
 
 
 27
 Like the majority opinion, I do not favor default judgments. However, it is difficult to see what more a district court can do in situations like this. Therefore, I would affirm the district court's denial of the motion to set aside the default judgment and the motion for reconsideration.
 
 
 
 *
 The Honorable Carl B. Rubin, District Judge for the Southern District of Ohio, sitting by designation
 
 
 [1]
 These are the same factors that are examined when reviewing the entry of default. However, an entry of default is reviewed under a more pliant standard. While the review of a default judgment requires a court to examine the provisions of Rule 60(b), an entry of default can be set aside for "good cause shown." INVST Financial Group v. Chem-Nuclear Systems, 815 F.2d 391, 398 (6th Cir.1987)
 
 
 [2]
 This would constitute a defense for Mrs. Manninen because a significant percentage of the money owed to Plaintiffs was owed as a result of obligations incurred by William Manninen Carpentry, and not W.M.C.I. J.A. at 43-46