*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 06a0013p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

TERESA F. BURRELL,

       *Plaintiff-Appellee,*

    *v.*

MARGARET HENDERSON et al.,

       *Defendants,*

COMMUNICATION WORKERS OF AMERICA, LOCAL 4310,

       *Defendant-Appellant.*

No. 04-4516

>

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 02-01119—Gregory L. Frost, District Judge.

Argued: December 7, 2005

Decided and Filed: January 12, 2006

Before: MARTIN, COLE, and GILMAN, Circuit Judges.

---

**COUNSEL**

**ARGUED:** Grant D. Shoub, HUNTER, CARNAHAN, SHOUB & BYARD, Columbus, Ohio, for Appellant. David K. Greer, Columbus, Ohio, for Appellee. **ON BRIEF:** Grant D. Shoub, HUNTER, CARNAHAN, SHOUB & BYARD, Columbus, Ohio, for Appellant. David K. Greer, Columbus, Ohio, for Appellee.

---

**OPINION**

---

RONALD LEE GILMAN, Circuit Judge. Communication Workers of America, Local 4310 (the Local) appeals the district court's denial of its motion for relief from a default judgment. The Local claims that the judgment in favor of Teresa Burrell should be vacated under Rules 60(b)(1), (4), or (6) of the Federal Rules of Civil Procedure due to mistake, excusable neglect, lack of jurisdiction, and/or for extraordinary circumstances. After considering all three subsections of Rule 60(b), the district court held that the Local was not entitled to relief from the $637,584.00 default judgment. For the reasons set forth below, we **REVERSE** the judgment of the district court and **REMAND** the case for further proceedings consistent with this opinion.

1

## I.  BACKGROUND

### A.      Underlying claim

In February of 1997, Burrell began her employment at Ameritech Corporation in Columbus, Ohio.  She was suspended in August of 2001 because of a poor attendance record.  At a review board hearing held as part of the company's grievance process, Burrell attributed her absences to a car accident, but she failed to furnish any documentation to corroborate her excuse.  Ameritech subsequently informed the Local, the union that represented Burrell, that Ameritech was terminating her employment due to excessive absences.

The Local reviewed Burrell's records and determined that there was no reasonable basis to believe that arbitration would reverse Burrell's termination.  As a result, the Local decided not to request arbitration with Ameritech on Burrell's behalf.  Margaret Henderson, president of the Local, informed Burrell of this decision in September of 2001.

### B.      Subsequent proceedings

In April of 2002, Burrell filed a charge of discrimination against "Communication Workers of America (CWA Local #4310)" with the Equal Employment Opportunity Commission (EEOC).  After being notified by the EEOC of her right to sue under the Age Discrimination in Employment Act (ADEA), Burrell filed a pro se complaint in November of 2002.  The caption of her complaint showed the following as the parties to the suit: "Teresa F. Burrell v. Margaret Henderson (President) of Communication Workers of America."  Burrell's complaint in its entirety reads as follows:

> This charge is being filed against the Union/ and President for failure to provide representation in arbitration to keep my job.  I was terminated after disability.  I was given misinformation by Union Steward Arlington Guy, as to the procedure for obtaining time off, I was told that if I go out on long term disability this would allow for me to by pass date of satisfaction, therefore, termination would not probably happen, because this is what happen[ed] to him.  When I took his advice I was terminated after we had the meeting with Human Resource.  Margaret Henderson sent me a letter stating that the Union did not feel that arbitration would get the decision reversed, she also called me on the telephone to inform me that the case would be closed and they were unable to help me.  The reason that I feel wronged is that when I filed the case with the Civil Right Commission there I was told that the other people I mentioned in the charge[s] had also been dismissed for going over the disability threshold which means more than three disabilities in a rolling year, but was returned after the Union fought for their jobs.  I was not given the same opportunity to possibly winning my job back.  All of the other employees were younger that myself and did not have as much time vested in the company as I had, therefore, I feel age and company years had a lot to do with the decision.

(All letters capitalized in original.)

At least one copy of the summons and complaint was sent to the Local's business address in Columbus, Ohio.  The district court found that the records of the clerk of the court indicate that Henderson and the Local were separately served with process, but the Local disputes this.  Written on the summons, under the heading "To: (Name and address of defendant)" is "CWA/Communication Workers of America/ 2991 Sullivant Ave/ Columbus, OH."  Henderson received the summons and complaint at the Local's office on December 12, 2002.

In June of 2003, over 16 months later, the magistrate judge assigned to the case issued a show-cause order requiring Burrell to explain why her case should not be dismissed for lack of

prosecution. The show-cause order stated that "[n]o response to the complaint has been made by defendant and plaintiff has taken no additional action" since service of process was completed. Burrell's response to the show-cause order reiterated her claim, but did not address her failure to prosecute. The magistrate judge then issued an order explaining that, to prevent the case from being dismissed, Burrell had to seek an entry of default and subsequently move for entry of a default judgment.

The clerk of the district court filed an entry of default against "Margaret Henderson, President and Communication Workers of America" on October 3, 2003. On October 22, 2003, Burrell's motion for a default judgment was granted. After a hearing the following month, damages were awarded against "Communication Workers of America" in the amount of $637,584.00, plus interest. The order also provided that no liability attached to Margaret Henderson, despite the fact that she had failed to answer the complaint on her own behalf. There were no representatives present for either Henderson or the Local at the damages hearing, although the district court stated that "the defendant [was] . . . given due notice of the time and place of the hearing." The Local, however, claims that it was never notified of the application for entry of default, the motion for a default judgment, or the date of the November hearing.

Burrell moved for execution on the judgment entered against the "Communication Workers of America" in April of 2004. The Communication Workers of America (the National) moved to set aside the judgment the following month insofar as it applied to the National, asserting that "the record reflects ambiguity as to whether the judgment was intended to be entered against CWA [the National] or CWA, Local 4310 [the Local]." Burrell did not oppose the National's motion. The district court declared the motion moot because "entry and judgment of default were entered as to the Local Union only."

In May of 2004, the Local also moved to set aside the default judgment. This was the first time that counsel had appeared on behalf of the Local and the first time that a motion was filed on its behalf. But Henderson had written a letter to Kenneth Murphy, the clerk of the district court, on December 17, 2003. Henderson claimed in the letter that she had answered the complaint for the Local within 20 days of receipt, and she additionally tried to contact the office of the clerk several times to inquire if additional information was needed. The letter stated that Henderson "assumed that [the clerk] didn't need any additional information since I did not hear from you."

According to an affidavit submitted by Henderson, she did not realize that hiring a lawyer for herself or the Local was necessary because she thought that the complaint was an extension of the EEOC proceedings. Henderson further claims that she did not realize that the letter she sent to Murphy in January of 2003, within 20 days of receiving the complaint, was not an appropriate response. Her affidavit also asserts that she sent another letter to Murphy in March of 2003 and again received no response. This letter was attached to her affidavit. Henderson did not place a case number on these letters, however, which may explain why they were not filed by the clerk until February of 2004.

Henderson also stated in her affidavit that she was unaware of Burrell's motion for a default judgment until she received the court's order granting the same, and she did not attend the damages hearing because she did not know about it. Finally, Henderson explained that, although the district court informed her by a letter in February of 2004 that she should hire an attorney, she "missed a substantial amount of work due to the illness of [her] mother," who died in April of that year. Henderson apologized for any confusion that she may have caused, attesting that "I did my best to comply with what the processes were or what I perceived them to be."

Despite Henderson's explanation, the district court denied the motion filed by the Local for relief from the default judgment. This timely appeal followed.

## II. ANALYSIS

### A.    Standard of review

When relief from a default judgment is sought pursuant to Rules 60(b)(1) and 60(b)(6), we review the district court's decision under the "abuse of discretion" standard. *In re Walter*, 282 F.3d 434, 440 (6th Cir. 2002). "Abuse of discretion is defined as a definite and firm conviction that the trial court committed a clear error of judgment." *Amernational Indus., Inc. v. Action-Tungsram, Inc.*, 925 F.2d 970, 975 (6th Cir. 1991) (citation and quotation marks omitted). A clear example of an abuse of discretion occurs where the district court fails to consider relevant "facts upon which the exercise of its discretionary judgment is based." *Walter*, 282 F.3d at 440 (citation omitted).

When relief from a default judgment is sought under Rule 60(b)(4), however, we review the district court's decision de novo. *General Star Nat'l Ins. Co. v. Administratia Asigurarilor de Stat*, 289 F.3d 434, 437 (6th Cir. 2002). This is because Rule 60(b)(4) authorizes relief from judgment where a judgment is void for lack of jurisdiction, and denying a motion to vacate a void judgment is a per se abuse of discretion. *See Eglinton v. Loyer*, 340 F.3d 331, 335-36 (6th Cir. 2003) (holding that a default judgment was not void because the bankruptcy court that entered the judgment had proper jurisdiction over the party seeking relief).

### B.    Statutory framework

When reviewing a motion for relief under Rule 60(b), the court is not permitted to consider the underlying strength of a plaintiff's claim. *Good v. Ohio Edison Co.*, 149 F.3d 413, 423 (6th Cir. 1998). Instead, the Federal Rules of Civil Procedure and Sixth Circuit caselaw supply a two-pronged inquiry for evaluating motions to vacate a default judgment. Rule 55(c) of the Federal Rules of Civil Procedure provides that "[f]or good cause shown the court may set aside an entry of default, and if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)." When a defendant seeks relief from an entry of default, three equitable factors are considered to determine if "good cause" has been shown under the Rule 55(c) component of the analysis: "(1) whether culpable conduct of the defendant led to the default, (2) whether the defendant has a meritorious defense, and (3) whether the plaintiff will be prejudiced." *Waifersong, Ltd. v. Classic Music Vending*, 976 F.2d 290, 292 (6th Cir. 1992) (citing *United Coin Meter Co. v. Seaboard Coastline R.R.*, 705 F.2d 839, 845(6th Cir. 1983)).

On the other hand, when an entry of default has ripened into a default judgment, we must consider the equitable factors first enunciated in *United Coin Meter* and determine whether the Local has met the stricter requirements of Rule 60(b). *Thompson v. Am. Home Assurance Co.*, 95 F.3d 429, 433 (6th Cir. 1996) (upholding the district court's grant of relief from the default judgment because the defendant had no actual knowledge of the action until after the judgment had been entered). Public policy favoring the finality of judgments is reflected in the more specific requirements of Rule 60(b) that apply once an actual default judgment has been entered and damages have been calculated. *Waifersong*, 976 F.2d at 292. But the competing policy consideration that values the disposition of cases on their merits dictates that the court "should . . . construe[] all ambiguous or disputed facts in the light most favorable to the defendant[]." *INVST Financial Group, Inc. v. Chem-Nuclear Systems, Inc.*, 815 F.2d 391, 398 (6th Cir. 1987) (reversing the denial of relief from a default judgment because the defendant had a credible explanation for its delay in filing an answer) (citation and quotation marks omitted). Consequently, all factual doubts in the present case should be resolved in favor of the Local. *See Thompson*, 95 F.3d at 434.

Here, the Local seeks relief from the default judgment under three subsections of Rule 60(b). These subsections provide in pertinent part as follows:

> On motion and upon such terms as are just, the court may relieve a party . . . from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; . . . (4) the judgment is void; . . . or (6) any other reason justifying relief from the operation of the judgment.

Fed. R. Civ. P. 60(b)(1), (4), and (6). The district court found that the Local did not satisfy any of these Rule 60(b) requirements. It thus never analyzed the Rule 55 equitable factors under *United Coin Meter*. The provisions of Rule 60(b) and the Rule 55 factors will now be considered in turn.

## C.       Rule 60(b)(1)

When relief is sought under Rule 60(b)(1), the culpability element of the *United Coin Meter* factors "is framed in terms of 'mistake, inadvertence, surprise, or excusable neglect.'" *Waifersong*, 976 F.2d at 292 (quoting Fed. R. Civ. Pro. 60(b)(1)). The Local must therefore prove that the default was due to one or more of these factors before it is permitted to demonstrate that it can satisfy the remaining two *United Coin Meter* factors—a meritorious defense and the lack of prejudice to the plaintiff. *See Williams v. Meyer*, 346 F.3d 607, 613 (6th Cir. 2003) (reversing the district court's denial of relief from a default judgment based on excusable neglect).

Courts apply Rule 60(b)(1) "equitably and liberally . . . to achieve substantial justice." *Id.* (citation omitted). In cases that have not been heard on the merits, the determination of whether neglect is excusable takes into account the length and reasons for the delay, the impact on the case and judicial proceedings, and whether the movant requesting relief has acted in good faith. *See Burnley v. Bosch Ams. Corp.*, 75 F. App'x 329, 333 (6th Cir. 2003) (unpublished) (considering the reasons for the delay and the impact on the nonmoving party in determining that the moving party did not meet the test of excusable neglect); *see also Jinks v. Allied Signal, Inc.*, 250 F.3d 381, 386 (6th Cir. 2001) (defining a more lenient standard for excusable neglect in cases of default than in cases when a party neglects to raise a certain argument).

As in *INVST*, 815 F.2d at 400, "[t]his is not a case in which intransigence . . . has made a default judgment appropriate." The district court's holding that "[t]he Local 4310 failed to address this case until approximately a year and a half after it was required to file its answer to Burrell's Complaint" ignores the actions that Henderson, acting on behalf of the Local, took after receiving the complaint. Henderson claims that she contacted the office of the clerk multiple times by letter and telephone. According to Henderson's affidavit, she sent a timely response to the complaint in the manner that she thought appropriate—a letter to the clerk's office. Absent evidence that Henderson is mistaken or lying about the letters she sent, we will assume that she in fact took these actions. *See INVST*, 815 F.2d at 398 (resolving all factual doubts and ambiguities in favor of the defendant). The clerk's office failed to respond to Henderson or to notify the judge of her letters, leading Henderson to believe (rightly or wrongly) that no further action was necessary.

The Local's conduct, through Henderson as its president, is distinguishable from the case of *Manufacturers' Industries Relations Association v. East Akron Casting Co.*, 58 F.3d 204 (6th Cir. 1995) (overturning the trial court's grant of relief under Rule 60( b)(1)), which was relied upon by the district court. In that case, the defendants were personally notified months in advance by the plaintiff that a lawsuit was being filed, but they took *no* action until 11 months after the default judgment had been entered. *Id.* at 208. The defendants also offered no excuse for their inaction or for their failure to utilize arbitration before the plaintiff resorted to litigation. *Id.* Finally, the district court in *Manufacturers'* pointed out that "it cannot seriously be argued that [the defendant] was unable to grasp the seriousness of the situation." *Id.* at 206.

In this case, however, several "procedural difficulties" contributed to the district court's entry of a default judgment. *See INVST*, 815 F.2d at 399. Burrell's pro se complaint does not state the

basis for jurisdiction or make a demand for judgment. *See* Fed. R. Civ. P. 8(a). This created confusion for the Local, which was not represented by a lawyer and thus had Henderson handling Burrell's claim. As Henderson stated in her affidavit, "I had no idea what was happening, or who was being sued in this matter and for what, or the nature of the proceedings or their ramifications." Henderson's failure to grasp the seriousness of the situation is evident, and is not entirely her fault.

Burrell also made mistakes that led to an ambiguity as to the identity of the defendant in this case. The complaint listed the defendant as "Margaret Henderson (President) of Communication Workers of America," but the summons described the defendant as "CWA/ Communication Workers of America." As a result, the district court had to explicitly hold that liability did not attach to Henderson, who was listed as a defendant in the complaint. In addition, the National felt compelled to move for relief from the default judgment, even though the district court held that judgment had only been entered against the Local. The ambiguity as to the proper defendant's identity that was created by Burrell and, to some extent, by the district court, shifts some of the blame for the entry of default from the Local to Burrell.

Burrell's mistakes were overlooked by the district court. When she failed to respond appropriately to the district court's show-cause order for lack of prosecution, the district court instructed her specifically on how to procure a default judgment. Yet the office of the clerk did not return Henderson's letters or telephone calls, and Henderson did not receive any correspondence from the district court until the November 18, 2003 order that determined the damages in this case. The district court stated that the Local had received notice that Burrell was seeking a default judgment, but the November 18 order is the first evidence in the record that the district court instructed the clerk of the court to notify the Local as to the progress of the litigation. Although notice is not required under Rule 55, the fact that the Local was unaware of the default proceedings diminishes its culpability, especially because Burrell failed to prosecute her claim for over 16 months.

Upon receiving the November 18, 2003 order imposing damages based upon the default judgment, Henderson mailed another letter to the clerk of the court, but did not receive any response until the district court sent her a letter in February of 2004 advising Henderson to obtain a lawyer. Her delay in doing so was due to Henderson having to deal with her mother's illness and death in the spring of 2004.

Henderson's choice not to retain counsel for the Local, both initially and upon receiving the district court's letter, was certainly imprudent. But the Local's neglect was excusable because Henderson, acting on behalf of the Local, was dealing with an ill mother for part of the time, and she diligently, albeit improperly, tried to respond to Burrell's complaint. The Local has not shown disrespect for these judicial proceedings. *See Williams*, 346 F.3d at 613 (defining culpability, in the context of a motion for relief from a default judgment, as "an intent to thwart judicial proceedings or a reckless disregard for the effect of [the party's] conduct on those proceedings"). In light of the mistakes made by both parties, Henderson's repeated attempts to advance the litigation, the Local's lack of notice of the default proceedings, and the fact that Rule 60(b)(1) is intended to be applied equitably, we hold that the district court abused its discretion in declining to find that the Local's failure to defend this action was due to excusable neglect.

We wish to emphasize, however, that "excusable neglect" will not be found in every case in which an unrepresented defendant fails to adequately respond to a complaint and a default judgment is entered against it. But here the district court failed to acknowledge the defects in Burrell's complaint, Henderson's attempts to timely respond, and the Local's lack of notice of the default proceedings. This case was handled improperly by multiple parties, and an injustice would result if the Local were made to bear the full burden for this improper handling.

**D.        The *United Coin Meter* factors**

Because the Local has demonstrated that it is not culpable under Rule 60(b)(1), we next consider the remaining two *United Coin Meter* factors: a meritorious defense and the lack of prejudice to Burrell.  These factors clearly weigh in favor of the Local.

A defense is meritorious if "there is *some possibility* that the outcome of the suit after a full trial will be contrary to the result achieved by the default." *Williams*, 346 F.3d at 614 (citation and quotation marks omitted) (emphasis in original).  If a defense is "good at law," regardless of the likelihood of success, it will be considered meritorious. *Id.* (quoting *United Coin Meter*, 705 F.2d at 845).

The Local has raised meritorious defenses to Burrell's claims of unfair representation under the Labor Management Relations Act and of age discrimination under the ADEA.  First, the Local asserts that it carefully reviewed Burrell's records and determined that the lack of supporting documentation rendered her case distinguishable from other cases in which the Local decided to pursue arbitration.  The Local argues, therefore, that it did not engage in discrimination of any kind against Burrell.  This defense is certainly "good at law." *See Williams*, 346 F.3d at 614.  Construing the defense "in the light most favorable to [the Local]," *id.* (citation and quotation marks omitted), the existence of the Local's defense creates "some possibility" of a different outcome in this case.  In addition, unions are permitted a "wide range of reasonableness" in determining which cases to arbitrate. *Garrison v. Cossems Transp. Co.*, 334 F.3d 528, 538 (6th Cir. 2003).  The Local's defense that its behavior was reasonable is similarly "good at law." *See id.*

Finally, under the third *United Coin Meter* factor, there is no evidence in the record that Burrell will be prejudiced if the judgment is reopened. *See United Coin Meter*, 705 F.2d at 845.  Delay in adjudicating a plaintiff's claim does not qualify as sufficient prejudice under Rule 55. *Id.*  Instead, Burrell would have to show that the delay would result in a loss of evidence, increased opportunities for fraud, or discovery difficulties. *See Berthelson v. Kane*, 907 F.2d 617, 621 (6th Cir. 1990).  She has made no such showing.  The Local has therefore more than satisfied its burden of demonstrating an entitlement to relief under Rules 55(c) and 60(b)(1), and the district court abused its discretion in denying that relief.

Because we hold that relief from the default judgment is warranted under Rule 60(b)(1), we have no need to analyze the Local's alternative claims for relief under Rules 60(b)(4) and 60(b)(6).

## III.  CONCLUSION

For all of the reasons set forth above, we **REVERSE** the judgment of the district court and **REMAND** the case for further proceedings consistent with this opinion.