NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0323n.06
Filed: May 11, 2009

No. 08-5942

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

MARK VESLIGAJ,

    Plaintiff-Appellee,

       v.

MICHAEL PETERSON; DIALYSIS DIMENSIONS,
INC.; PETERSON & ASSOCIATES, INC.,

    Defendants,

DIALYSIS SYSTEMS, INC.,

    Defendant-Appellant.

On Appeal from the United
States District Court for the
Middle District of Tennessee
at Nashville

_____/

**Before:**     **GUY, GILMAN, and COOK**, Circuit Judges.

**PER CURIAM.**    Defendant Dialysis Systems, Inc. (DSI), appeals from the denial

of its motion to alter or amend the default judgment entered in favor of plaintiff Mark

Vesligaj for a total of $170,873.99, representing unpaid wages, prejudgment interest on the

unpaid wages, and the value of a 1.5% equity interest in DSI. DSI argues that the district

court abused its discretion in finding that the standards for relief from judgment had not been

met and by entering judgment without an evidentiary hearing to determine the amount of

damages. For the reasons set forth below, we affirm in part and reverse in part, vacating only

the $36,000 award representing the value of the 1.5% equity interest in DSI and remanding

for further determination of the damages in that regard.

## I.

On April 25, 2007, plaintiff filed this action in state court asserting claims for breach

of contract, *quantum meruit*, and fraudulent conveyance against defendants Michael

Peterson, Peterson & Associates, Inc. (PAI), Dialysis Systems, Inc. (DSI), and Dialysis

Dimensions, Inc. (DDI). Plaintiff alleged that Peterson was a majority shareholder, principal

officer, and a member of the board of directors of PAI, DSI, and DDI (which acquired the

assets of DSI). DSI hired plaintiff to work as a mechanical engineer on a 30-hour-week basis

and offered plaintiff a 1.5% equity interest in DSI because DSI was a young company that

could not pay plaintiff more.

In July 2003, however, Peterson told plaintiff that DSI could not pay him and asked

him to defer his salary until cash flow improved or additional investors were found. That

continued until plaintiff resigned in July 2004, when he began to work instead as a

consultant. DSI made some payments on the unpaid wages until November 2006. An

agreement in principle was reached with employees who had deferred salary and were owed

equity interests in DSI, but the agreement was not consummated. Plaintiff alleged that DSI

transferred its assets to DDI, and, in June 2006, plaintiff was offered a 2.5% interest in DDI

in exchange for an agreement to further forbear the unpaid wages and not seek the equity

interest due him. Plaintiff received a proposed equity agreement and a promissory note from

DDI for $100,665.48 in wages and interest from DDI. Plaintiff did not accept the offer,

however, allegedly because the agreement included further deferral contingencies that he found unacceptable.

A petition for removal was filed on behalf of all the defendants, but the answer filed on May 25, 2007, was filed only on behalf of Peterson, PAI, and DDI. Plaintiff's motion for entry of default against DSI was erroneously denied by the clerk, but, after correction, default was entered against DSI on July 30, 2007. Plaintiff voluntarily dismissed the claims against all the defendants *except* DSI in November 2007, and filed his first motion for entry of default judgment against DSI in December 2007.

DSI did not respond to this first motion for default judgment, but a response was filed by the three other defendants along with an affidavit from Peterson. In denying entry of default judgment on January 29, 2008, the district court stated that it had not considered the response because the dismissed defendants had no standing to oppose the entry of default judgment against DSI. Nonetheless, noting that the clerk had not entered judgment because the judgment sought an undetermined equity interest and non-statutory interest, the district court found that the plaintiff's declaration did not provide sufficient evidence as to the calculation of the damages, and denied the motion without prejudice to refiling the motion supported by sufficient evidence to permit the court to determine a sum certain. On April 7, 2008, no motion having been filed, the district court issued an order scheduling a status conference for April 21, 2008.

The next day, April 8, 2008, plaintiff filed his revised motion for default judgment supported by plaintiff's third declaration setting forth a breakdown of the unpaid wages, his

valuation of an 1.5% equity interest in DSI, and calculation of prejudgment interest on each.

DSI obtained counsel and filed a formal appearance on April 17, 2008, but not until after the

district court had already entered default judgment against it on April 15, 2008. On April 18,

2008, DSI filed a motion to alter or amend the default judgment under Fed. R. Civ. P. 59(e),

complaining specifically that the judgment was entered before the expiration's of the ten-day

period for responding under Local Rule 7.01 and contesting not only the value of the equity

interest but also whether plaintiff was entitled to an equity interest at all. DSI submitted a

revised affidavit from Peterson, in which Peterson admitted being DSI's president, CEO, and

majority shareholder; stated that DSI's assets were foreclosed by its creditors, including

himself, and then sold to DDI; and denied that the equity interest in DSI had any value.

Plaintiff filed a response in opposition to DSI's motion.

In an order entered on July 3, 2008, the district court denied DSI's motion to alter or

amend the default judgment on the grounds that DSI had not established that it was entitled

to relief under Fed. R. Civ. P. 55(c) and 60(b)(1). DSI's appeal followed.[1]

## II.

### A. Default Judgment

"An appeal from a default judgment is actually an appeal of the denial of a Rule 60(b)

motion, through which a party seeks relief from the default judgment." *Frontier Ins. Co. v.*

*Blaty*, 454 F.3d 590, 595 (6th Cir. 2006). This court reviews a district court's denial of such

---

[1]This court has jurisdiction of this appeal since DSI's motion to alter or amend judgment was filed timely under Fed. R. Civ. P. 59(e). *See Clarendon Ltd. v. Foster*, No. 92-5626, 1993 WL 339703, at *5 (6th Cir. Sept. 2, 1993) (unpublished).

a motion for abuse of discretion. *Burrell v. Henderson*, 434 F.3d 826, 831 (6th Cir. 2006).

Under Fed. R. Civ. P. 55(c), a court "may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b)."[2]  Three factors are considered in determining whether there is "good cause" to set aside a default:  "(1) [w]hether culpable conduct of the defendant led to the default, (2) [w]hether the defendant has a meritorious defense, and (3) [w]hether the plaintiff will be prejudiced."  *Waifersong, Ltd. v. Classic Music Vending*, 976 F.2d 290, 292 (6th Cir. 1992) (citing *United Coin Meter Co. v. Seaboard Coastline RR*, 705 F.2d 839, 845 (6th Cir. 1983)).  When the default has ripened into a default judgment, the court must consider these factors, as well as determine whether the stricter requirements of Fed. R. Civ. P. 60(b) are met.  *Burrell*, 434 F.3d at 832.

Here, the district court treated DSI's motion as seeking relief under Rule 60(b)(1). Where that is the case, the culpability element of the three-factor test "is framed in terms of

---

[2]Rule 60(b) provides that:

On motion and just terms, the court may relieve a party . . . from a final judgment, order, or proceeding for the following reasons:

(1)    mistake, inadvertence, surprise, or excusable neglect;

(2)    newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3)    fraud (whether previously called intrinsic or extrinsic), misrepresentation, or other misconduct by an opposing party;

(4)    the judgment is void;

(5)    the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6)    any other reason that justifies relief.

'mistake, inadvertence, surprise, or excusable neglect.'" *Waifersong*, 976 F.2d at 292 (quoting Rule 60(b)(1)). Only if the party seeking to vacate a default judgment makes this showing may the court consider the other *United Coin Meter* factors. *Id*. The district court did not abuse its discretion in finding that DSI's culpable conduct led to the default.

DSI, aware of this action since it joined in the removal, has offered no explanation for its having delayed almost a year in its defense of the action. Nor could it claim ignorance of the proceedings since Peterson, its majority shareholder, was also a defendant. DSI did nothing to defend itself before or after default was entered in July 2007, or when plaintiff moved for default judgment in December 2007. To the extent DSI might argue that it thought the opposition filed by the dismissed defendants would be considered in its defense, the district court explicitly advised DSI otherwise in the order denying the first motion for default on January 29, 2008. Moreover, the denial of that first motion for default judgment was explicitly without prejudice to refiling with evidence to support a determination as to damages. Nonetheless, DSI did not take further action, formally or informally, until April 2008, when it secured counsel in the wake of plaintiff's revised motion for default judgment.[3]

DSI complains that default judgment was entered before expiration of the ten-day period for responding to a motion under the local rules, but does not claim that the district court was precluded from deciding the motion after only seven days. DSI also asserts that

---

[3]DSI correctly points out that the district court was wrong when it said DSI had made no appearance, because DSI had joined in the removal. Rule 55(b)(2) states that if a party against whom default judgment is sought has appeared personally he "must be served with written notice of the application at least 3 days before the hearing." DSI emphasizes that this circuit, like most, has found that informal appearances may suffice. *See*, *e.g.*, *Lutomski v. Panther Valley Coin Exch.*, 653 F.2d 270, 271 (6th Cir. 1981). The record reflects, however, that DSI was served with plaintiff's application for default judgment.

it was entitled to wait for the district court to schedule an evidentiary hearing under Fed. R. Civ. P. 55(b)(2) before filing a formal appearance or opposition to default judgment. First, Rule 55(b)(2) provides that the district court "*may* conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." (Emphasis added.) This provision, by its terms, allows but does not require the district court to conduct an evidentiary hearing. *See Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989) ("[I]t was not necessary for the District Court to hold a hearing, as long as it ensured that there was a basis for the damages specified in a default judgment.").

Even if DSI had been waiting for a notice of hearing, which it has not actually claimed, that would not provide sufficient grounds to vacate the default judgment for mistake, inadvertence, surprise, or excusable neglect. *Compare Burrell*, 434 F.3d 832-34 (finding the culpability element was met where the defendant diligently, but improperly, tried to respond and the defendant did not have notice of the default proceedings). Indeed, the record amply supports the conclusion that DSI deliberately elected to sit out of the case for almost a year. The district court did not abuse its discretion in finding that DSI had not demonstrated grounds to vacate the default judgment under Fed. R. Civ. P. 60(b)(1).[4]

---

[4]Although DSI faults the district court for not considering its motion under Rule 60(b)(6), subsection (6) applies "only in exceptional or extraordinary circumstances which are not addressed by the first five numbered clauses of the Rule." *Olle v. Henry & Wright Corp.*, 910 F.2d 357, 365 (6th Cir. 1990) (internal quotation marks and citation omitted). DSI has not articulated any grounds warranting relief under Rule 60(b)(6).

**B.      Determination as to Damages**

Without contesting the award of damages of $99,906.99 in unpaid wages or $34,967 in prejudgment interest on those unpaid wages, DSI argues that the district court erred in awarding $36,000 for plaintiff's 1.5% equity interest in DSI without conducting an evidentiary hearing.  It is true, as DSI argues, that:  "'Where damages are unliquidated a default admits only [the defaulting party's] liability and the amount of damages must be proved.'" *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110 (6th Cir. 1995) (quoting *Fehlhaber v. Fehlhaber*, 681 F.2d 1015, 1026 (5th Cir. 1982) (en banc)).  As the Second Circuit explained:  "Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true.  The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999) (citations omitted).  It is more than evident from the record, however, that the district court did not treat the default as an admission with respect to damages.  This is demonstrated by the district court's denial of the plaintiff's first motion for default judgment on the grounds that there was not sufficient evidence in the record to make a determination as to damages.

A district court's determination that a hearing is not necessary to determine the amount of damages under Rule 55(b)(2) is reviewed for abuse of discretion. *Ortiz-Gonzalez v. Fonovisa*, 277 F.3d 59, 63 (1st Cir. 2002) (citing *Pope v. United States*, 323 U.S. 1, 12 (1944) ("It is a familiar practice and an exercise of judicial power for a court upon default,

by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly.")). Here, the district court's reliance on plaintiff's third sworn declaration to provide the necessary evidentiary basis for calculating the unpaid wages and the amount of prejudgment interest on the unpaid wages was not an abuse of discretion. We cannot conclude the same, however, with respect to the determination regarding the value of the 1.5% equity interest in DSI.

The only evidence in the record was plaintiff's declaration, in which he attested as follows:

> In support of my revised motion for a sum certain, I submit my good faith valuation of the 1.5% interest in DSI to be $36,000. This valuation is based on my intimate knowledge of DSI and its products, services, and projects and the market it served. More specifically, while the company's assets have been transferred to Dialysis Dimensions, Inc. ("DDI"), there is still substantial value in DSI. My valuation relies on DSI's net operating losses ("NOLs") of $2,400,000, which NOLs I believe have value (to DDI) for tax planning purposes. My understanding of these NOLs is that they can be assigned to and assumed by DDI and utilized to offset DDI gain. My understanding of the deal between DSI and DDI will allow such assignment and assumption, and I understand that it is the intention of DSI to assign the NOLs to DDI. DSI still validly exists for this purpose. It is my belief that DDI intends to, upon securing a new investor for DDI, pull forward the NOLs from DSI and place them into DDI to boost profitability. I am aware of many phone calls in the months prior to the asset reassignment from DSI to DDI in which Michael Peterson discussed with company's counsel the strategies and legal maneuverings necessary to accomplish this utilization of the NOLs for the financial benefit of DDI.

This evidence, apparently based on personal knowledge, indicates that DSI's net operating losses have "value," but also that such "value" depends on the ability to use the NOLs to offset the future gains of DDI. Peterson's affidavit filed in support of DSI's motion to alter or amend judgment conceded that the NOLs have value to the extent of any profit earned by

DDI, but asserted that the NOLs had no value because DDI had never earned a profit. On this record, we find plaintiff's declaration provided insufficient evidence to determine with reasonable certainty that the value of the 1.5% equity interest in DSI was equal to $36,000. For this reason, it was an abuse of discretion not to make further inquiry before determining the value of plaintiff's 1.5% equity interest in DSI.

Accordingly, the judgment is **AFFIRMED** in part and **REVERSED** in part, the judgment is **VACATED** only with respect to the award of $36,000, and the matter is **REMANDED** for further proceedings to determine the value of the 1.5% equity interest in DSI.