NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0659n.06

Case No. 08-5561

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Sep 09, 2011*

LEONARD GREEN, Clerk

| | |
|---|---|
| WILLIAM M. FLYNN, aka William Michael Flynn,<br><br>    Plaintiff-Appellant,<br><br>       v.<br><br>PEOPLE'S CHOICE HOME LOANS, INC., and its agents, John and Jane Does 1 thru 50, known and unknown to the plaintiff; WELLS FARGO BANK, MINNESOTA, N.A., as trustee for amortizing residential collateral trust series BC-2008 and its agents, John and Jane Does 1 thru 50, known and unknown to the plaintiff, MICHAEL L. RIDELE, trustee for People's Choice Home Loans, Inc.,<br><br>    Defendants-Appellees,<br><br>FAIRBANKS CAPITAL CORPORATION, and its agents, Joan and Jane Does 1 thru 50, known and unknown to the plaintiff; PRIORITY TRUSTEE SERVICES OF TN, LLC, and John and Jane Does 1 thru 50 agents of Priority Services of TN known and unknown to the plaintiff; JOEL A. FREEDMAN; NIKOLE SHELTON; MADELINE RAMOS; DIONNE SIMMONS; ALAN RHENEY, agents of Priority Trustee Services of TN, LLC,<br><br>    Defendants. | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE |

BEFORE: BATCHELDER, Chief Judge; BOGGS and WHITE, Circuit Judges.

**ALICE M. BATCHELDER, Chief Judge.** Alleging improprieties in a mortgage and subsequent foreclosure on his property in Tennessee, William Flynn filed this diversity action against People's Choice Home Loans, Inc. ("People's"), Wells Fargo Bank ("Wells Fargo"), Michael Ridele, and others. Several of the original defendants were dismissed from the lawsuit for various reasons and are not part of this appeal, but Flynn won default judgment against People's, Wells Fargo, and Ridele. However, the district court awarded Flynn no damages, holding that he failed to prove any damages. Flynn now appeals. For the following reasons, we AFFIRM the district court.

## I.

More than two years after Flynn filed his complaint alleging improprieties in a mortgage and subsequent foreclosure on his property in Tennessee, he moved for default judgment against defendants People's, Wells Fargo, and Ridele (collectively, "the defendants") because they failed to respond to the complaint or otherwise enter appearances in the district court. The court granted the motion, entered default judgment against the defendants, and referred the matter to a magistrate judge for a determination of damages.

The magistrate judge ordered Flynn to submit any documentation, including affidavits and other sworn statements, that Flynn wanted the district court to consider in determining an amount of damages. In response, Flynn filed a three-page memorandum requesting $34.8 million in damages. The memorandum did not have any attachments.

Shortly before Flynn filed his memorandum, Wells Fargo finally entered an appearance and immediately moved to set aside the default judgment. Wells Fargo also responded to Flynn's request for $34.8 million in damages, arguing that Flynn had failed to submit proof of any damages.

2

The magistrate judge issued an order postponing a decision on damages until the district court ruled on Wells Fargo's motion to set aside the default judgment. The district court denied the motion, and the magistrate judge issued a second order instructing Flynn to submit documents in support of an award of damages. In response, Flynn filed a two-page memorandum requesting $42 million in damages. The memorandum did not have any attachments.

Wells Fargo responded to Flynn's memorandum, again arguing that Flynn had failed to submit proof of any damages.

The magistrate judge subsequently issued a report recommending that Flynn be awarded no damages because Flynn had failed to document any damages. Flynn submitted objections to the report, to which he attached numerous documents purporting to prove damages.

The district court initially overlooked Flynn's objections, adopted the magistrate judge's recommendation, and entered an order awarding no damages to Flynn. Upon review of Flynn's objections a few days later, the district court affirmed its original order and stated that the time had passed for Flynn to prove his damages. It further noted that even upon review of the documents submitted by Flynn, he was not entitled to damages. Flynn filed a motion for relief from judgment, which the district court denied.

In this timely appeal, Flynn argues that he proved damages against Wells Fargo in his complaint and in his objections to the magistrate judge's report. Flynn further argues that Wells Fargo should not have been permitted to defend itself after entry of the default judgment. Flynn also moved for the appointment of counsel, claiming that he had mental issues and attaching a document showing that he had been diagnosed with paranoid schizophrenia. This court granted the motion,

and Flynn's newly appointed counsel filed a supplemental brief arguing that the district court had abused its discretion by denying an award of damages and by denying Flynn's motion for relief from judgment. Wells Fargo filed responsive briefs. People's and Ridele have never entered appearances in the district court or in this court.

## II.

Flynn argues that the district court ignored clear evidence of damages set forth in the record, that the district court failed to construe the pleadings liberally, and that the district court should have held a hearing on damages. None of these arguments has merit.

We review a district court's determination of damages pursuant to a default judgment for an abuse of discretion. *See Steele v. Voyale Corp.*, 88 F. App'x 916, 917 (6th Cir. 2004). "Abuse of discretion is defined as a definite and firm conviction that the trial court committed a clear error of judgment." *Burrell v. Henderson*, 434 F.3d 826, 831 (6th Cir. 2006) (internal quotation marks and citation omitted).

"Where damages are unliquidated a default admits only defendant's liability and the amount of damages must be proved." *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110 (6th Cir. 1995) (internal quotation marks omitted) (citing *Kelley v. Carr*, 567 F. Supp. 831, 841 (W.D. Mich. 1983) ("A default judgment on well-pleaded allegations establishes only defendant's liability; plaintiff must still establish the extent of damages.")). After winning default judgment, Flynn was directed to submit "a Memorandum of Facts and Law and any documentation" that would help the court determine an appropriate award of damages. Flynn submitted a memorandum alleging he had suffered "extreme mental anguish, tremendous financial loss, his business, health and almost

completely lost his wife to a massive heart attack and much more, too numerous to name." He went on to request $34.8 million dollars, which was allegedly calculated by using the $10 million damages claim in his complaint compounded at a rate of 12% over 29 months.[1] He provided no documentation whatsoever to support his claim, and apparently believed that, because he won default judgment, he did not need to do so, despite the plain wording of the magistrate judge's order.

Flynn had another chance to prove damages, but his second memorandum—though very similar to it—was no more informative than his first. Flynn now claimed $42 million in damages, allegedly calculated using the $10 million damages claim in his complaint compounded at a rate of 12% over 36 months.[2] Once again, he submitted no documentation whatsoever to support his claim of damages, despite the unambiguous wording of the magistrate judge's order.

In his objections to the magistrate judge's report, Flynn finally submitted documentation. The documentation comprises about 50 pages of receipts and records, including: (1) receipts for numerous purchases made at Walmart and Lowe's, which allegedly went towards home improvement, but upon closer examination, include items such as mayonnaise, milk, and cigarettes; (2) countless medical bills and records, including bills from a practice specializing in kidney diseases, a record showing a bulging disc in the spine, and a bill from an infectious diseases specialist; (3) a form listing every imaginable home furnishing, with checkmarks beside items that were allegedly stolen or destroyed by Wells Fargo, with a dollar amount listed beside each item,

---

[1]We note that even using the 12% interest rate claimed by Flynn, it is unclear how $10 million can compound to $34.8 million in 29 months. Flynn did not provide his calculations.

[2]It is again unclear exactly how Flynn arrived at a figure of $42 million. Flynn claims the figure was "calculated by professional (bank officers) money lenders, after the Plaintiff sought assistance in the calculations."

indicating that the following items were taken from the property: a $7,590 piano; a $4,975 lawn mower; a $19,750 back hoe; a $14,575 horse trailer; a $15,800 camper; and a $21,395 ski boat. The total estimated amount of lost personal property indicated on these forms, according to Flynn's counsel, is $224,070. Flynn also submitted forms in which he claims that "priceless" fruit trees were cut down, a "priceless" cemetery was destroyed, and that the "priceless" "ambience" of the property was destroyed. Finally, he submitted forms showing that the property foreclosed upon was worth about $120,000 and that he paid $28,645.78 in closing costs.

The submitted documentation fails to support a claim for damages. As to the Walmart and Lowe's receipts, he provides no evidence that any of the items bought were used at the property to improve it. And as noted above, many of the items were perishable and/or consumable goods that clearly were not used to improve the home. Accordingly, no damages could be awarded on that basis.

As to the medical expenses, he includes both his own and those of his wife, who is not even a party to this case. He provides no evidence, nor does he even suggest, that the foreclosure of his property *caused* the ailments leading to those medical expenses. Indeed, it does not take a medical degree to know that a property foreclosure cannot cause a ruptured disc in the spine, an infectious disease, or kidney failure. Accordingly, no damages could be awarded on that basis.

As to the itemized list of home furnishings, Flynn provided no proof that he actually owned anything in the list. Moreover, some of the items listed and the values associated with them are simply unbelievable, and if Flynn wanted damages, for example, for a back hoe worth nearly $20,000 or a $21,395 ski boat, he needed to provide proof of his ownership of those items and of their value.

Because Flynn provided no proof that he actually owned *any* of the items listed, the district court could not award damages on that basis.

As to the "ambience," the destroyed trees, and the cemetery, Flynn simply described them as "priceless," and he failed to provide any evidence that anything was even destroyed. Accordingly, no damages could be awarded on that basis.

Although the evidence of the property value and the closing costs might be Flynn's best argument in favor of damages, these claims also fail. He provides no evidence whatsoever that he had any equity in the property. Moreover, Flynn never actually provides any evidence that the foreclosure caused any damages. In fact, Flynn admits that the loan was "in arrears." Accordingly, no damages could be awarded on that basis.

In short, Flynn did not even provide a starting point from which the district court might have been able to determine if he was entitled to any damages. Flynn's counsel admits that the allegedly documented damages total only $256,000 plus interest and wholly fails to explain the $42 million figure claimed by Flynn. Counsel suggests Flynn is entitled to punitive damages, but provides no basis upon which the difference between $42 million and $256,000 could be attributed solely to punitive damages.

In her dissent, our colleague agrees that "Flynn's documents and claims were overinclusive" and that "his multi-million-dollar damages figure was preposterous," but goes on to suggest that the district court was nevertheless "obligat[ed] to determine Flynn's true damages." But the burden of proof for establishing damages was Flynn's. It was not the district court's burden to prove or disprove whether Flynn owned any of the items for which he claimed damages, nor was it the district

court's duty to determine damages when Flynn had given it no credible point from which to start, despite having multiple opportunities to do so. Indeed, the burden of establishing damages rested squarely and solely on Flynn, and he failed to carry it. *See Antoine*, 66 F.3d at 110 (citing *Kelley*, 567 F. Supp. at 841 ("A default judgment on well-pleaded allegations establishes only defendant's liability; plaintiff must still establish the extent of damages.")).

Because Flynn failed to establish any plausible damages and claimed an enormous figure ($42 million) unsupported by the documentation he provided, Flynn fails to provide any reason whatsoever that the district court erred, much less the requisite "definite and firm conviction" that it "committed a clear error of judgment." *See Burrell*, 434 F.3d at 831. Therefore, the district court did not abuse its discretion in denying damages.

Finally, we briefly address Flynn's sub-points. The district court did not abuse its discretion by failing to liberally construe Flynn's *pro se* pleadings or by failing to hold a hearing on damages. Flynn's pleadings were nearly incomprehensible, and his claim was based on the right to "be treated equally." The district court deciphered the pleadings, apparently found that they stated a claim upon which relief could be granted,[3] and gave Flynn two opportunities to specify and prove damages. Accordingly, it is clear that the district court was sufficiently lenient with Flynn.

Flynn never actually requested a hearing on damages, nor did he ever claim that—until his supplemental brief was filed in this court—he was improperly denied such a hearing. Nevertheless, based on what he submitted to the district court in an effort to prove damages (that is, absolutely

---

[3] Wells Fargo did not appeal the entry of default judgment, so this court expresses no opinion as to whether the pleadings stated a claim or supported a judgment of liability.

nothing to the magistrate judge, and 55 pages of records (discussed above) to the district judge), it is clear that the district court's determination that a hearing was unnecessary was not an abuse of discretion.

Flynn's *pro se* brief raises an argument not addressed by his counsel, namely, that the district court erred by allowing Wells Fargo to respond to the issue of damages, notwithstanding the entry of default judgment against Wells Fargo. Flynn is mistaken. *See Antoine*, 66 F.3d at 111 ("[E]ven if [the defendant] is bound on the issue of liability, it still has the opportunity to respond to the issue of damages.").

Accordingly, the district court's denial of a damages award was not an abuse of discretion.

**III.**

Flynn also claims the district court abused its discretion by denying his motion for relief from judgment under Fed. R. Civ. P. 60(b)(1). Rule 60(b)(1) provides that if a party shows "mistake, inadvertence, surprise, or excusable neglect," the court may relieve it from a final judgment. We review the denial of a motion for relief from judgment for abuse of discretion. *Legg v. Chopra*, 286 F.3d 286, 294 (6th Cir. 2002).

Flynn argues that "based on his medical condition [presumably, paranoid schizophrenia] and the side effects from prescription drugs, his mental state was such that he did not understand the rules or court orders." In determining whether relief is appropriate under Rule 60(b)(1), courts consider three factors: "(1) culpability—that is, whether the neglect was excusable; (2) any prejudice to the opposing party; and (3) whether the party holds a meritorious underlying claim or defense. A party seeking relief must first demonstrate a lack of culpability before the court examines the

remaining two factors." *Gumble v. Waterford Twp.*, 171 F. App'x 502, 506 (6th Cir. 2006) (citation omitted). Here, Flynn fails on the first prong. He did not submit any proof that any medical ailments or prescription medications affected his mental capacity.[4] On that basis alone, the district court could have reasonably denied the motion. But even if Flynn were able to show that his neglect was excusable, it would not be an abuse of discretion to deny relief on the basis of the third prong because Flynn has failed to show that he holds a meritorious underlying claim.

Accordingly, the district court did not abuse its discretion in denying Flynn's 60(b) motion.

**IV.**

For the foregoing reasons, we **AFFIRM** the judgment of the district court.

---

[4]He did, however, submit evidence *to this court*, when requesting counsel, that he suffers from paranoid schizophrenia. The district court did not have that information when ruling on Flynn's 60(b) motion.

**HELENE N. WHITE, Circuit Judge** (dissenting). Although this is a close case, I respectfully dissent from my colleagues' conclusion that the district court did not abuse its discretion in denying Flynn damages based on the default judgment he obtained against Wells Fargo.

As a pro se litigant, Flynn was entitled to liberal construction and active interpretation of his pleadings. *See Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir. 1985). The magistrate judge's first order to submit evidence of damages directed Flynn to provide the court with "any and all documentation, including affidavits and other sworn statements" that he wanted the court to consider in assessing his damages. Flynn's response to this order restated the requests for relief and damages listed in his complaint and provided no documentary proof of the claimed damages. It should have been evident to the court from Flynn's response that he did not understand what was required of him. The magistrate judge's second order to submit proof of damages provided no further instruction to Flynn. The order merely directed that Flynn submit "any documents, including affidavits, that he want[ed] the court to consider in assessing damages." Again, Flynn responded by listing his requested damages but included no documentary evidence in support. After receiving a second bare response from Flynn, it should have been even more apparent to the court that Flynn did not understand what was requested of him.

Upon receiving the magistrate judge's report and recommendation, Flynn realized that he had not provided what the court required. In his objections to the report and recommendation, Flynn offered his apologies to the court for failing to properly comply with the court's orders and explained that he had misinterpreted the Federal Rules of Civil Procedure to mean that the relief requested in the complaint would be automatically awarded to him by virtue of the default judgment. Flynn

11

attached to his objections fifty-five pages of what he believed to be documentary proof of his damages, including receipts for household goods and an itemized list of furniture and fixtures lost in the foreclosure with estimated values.[1]

It is unclear from the district court's orders adopting the magistrate judge's recommendation to deny damages and denying the motion for reconsideration to what extent the court reviewed the attachments accompanying Flynn's objections. Bearing in mind Flynn's status as a pro se litigant and his attempts to explain his reasons for failing to satisfactorily respond to the magistrate judge's orders, the district court should have evaluated the evidence submitted in the attachments in conjunction with the allegations and exhibits in Flynn's complaint. These materials provided a starting point from which the court should have assessed Flynn's damages.

Flynn provided evidence of the nature and value of personal property he alleged was lost in the foreclosure. Flynn submitted copies of store receipts for the purchase of items for which he could legitimately have claimed damages, including construction supplies, tools, kitchen implements, furnishings, and electronics. He also submitted an itemized list of property that he alleged had been in or around the house, including furniture, tools, equipment, and vehicles, along with estimated values. That list included the notation that "[t]he prices shown are from the best of my memory under penalty of perjury," followed by Flynn's wife's name. Although not proof certain of Flynn's damages, these documents provided evidence that the district court should have

---

[1]In his motion for relief from judgment, Flynn again explained to the court that he had misunderstood the procedure for proving damages and directed the court's attention to the attachments to his objections.

considered in making a determination of damages. The majority's observation that Flynn's receipts included items, such as food, that could not have been used to improve the house indicates that the receipts were overinclusive; it does not undermine the legitimacy of other items listed on the receipts. The additional observation that the itemized list of property provided no evidence of Flynn's ownership of anything on the list is similarly problematic. The list did not disprove ownership either and, indeed, the district court provided no explanation why ownership could not be inferred from presence of the items in the house owned by Flynn and by Flynn's wife's attestation as to her personal memory of the prices of each item. Proof of ownership could have been provided by testimony or by further evidentiary proffers during a hearing. The district court could have then made an evaluation of the evidence, or Wells Fargo could have conducted cross-examination or introduced its own evidence in rebuttal.

Further, Flynn's complaint and attachments provided statements of his ownership in the property and its value, as well as copies of checks for a down payment and mortgage payment. It is well established that the owner of real property is competent to attest to the value of his or her property. *See State ex rel. Smith v. Livingston Limestone Co., Inc.*, 547 S.W.2d 942, 943 (Tenn. 1977) ("In most states, and in Tennessee, the owner of real property is held to be qualified, by reason of his ownership alone, to give an opinion in evidence of the value of his land."); *Airline Const. Inc. v. Barr*, 807 S.W.2d 247, 254-55 (Tenn. Ct. App. 1990); *see also* 7 Fed. Proc., L. Ed. § 14:81 ("The opinion testimony of a landowner as to the value of the land is admissible without further qualification, and in testifying as to the value of the property the owner is entitled to the privileges

of a testifying expert. The landowner's testimony can be tested through cross-examination or independent evidence refuting the owner's estimate . . . .").

That Flynn's documents and claims were overinclusive and his multi-million-dollar damages figure was preposterous did not relieve the court of the obligation to determine Flynn's true damages. Accordingly, the district court should have scheduled a hearing to determine Flynn's damages with more certainty and to provide Wells Fargo the opportunity to refute Flynn's claims with evidence or through cross-examination.

Certainly, the district court has wide discretion under Federal Rule of Civil Procedure 55(b) to decide whether a hearing is necessary to determine damages pursuant to a default judgment. *See Vesilgaj v. Peterson*, 331 F. App'x 351, 354-55 (6th Cir. 2009) (unpublished); *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989). However, the court, in viewing the totality of the circumstances, should have been more tolerant of Flynn's attempts to comply with its orders. Thus, I would remand the case to the district court for further consideration of the issue of Flynn's damages, as well as to address Wells Fargo's arguments raising *Frow v. De La Vega*, 82 U.S. 552 (1872), in the first instance.