ALICE M. BATCHELDER, Chief Judge.
Alleging improprieties in a mortgage and subsequent foreclosure on his property in Tennessee, William Flynn filed this diversity action against People’s Choice Home Loans, Inc. (“People’s”), Wells Fargo Bank (“Wells Fargo”), Michael Ridele, and others. Several of the original defendants were dismissed from the lawsuit for various reasons and are not part of this appeal, but Flynn won default judgment against People’s, Wells Fargo, and Ridele. However, the district court awarded Flynn no damages, holding that he failed to prove any damages. Flynn now appeals. For the following reasons, we AFFIRM the district court.
*454 I.
More than two years after Flynn filed his complaint alleging improprieties in a mortgage and subsequent foreclosure on his property in Tennessee, he moved for default judgment against defendants People’s, Wells Fargo, and Ridele (collectively, “the defendants”) because they failed to respond to the complaint or otherwise enter appearances in the district court. The court granted the motion, entered default judgment against the defendants, and referred the matter to a magistrate judge for a deteraiination of damages.
The magistrate judge ordered Flynn to submit any documentation, including affidavits and other sworn statements, that Flynn wanted the district court to consider in determining an amount of damages. In response, Flynn filed a three-page memorandum requesting $84.8 million in damages. The memorandum did not have any attachments.
Shoi'tly befoi’e Flynn filed his memorandum, Wells Fargo finally entered an appearance and immediately moved to set aside the default judgment. Wells Fargo also responded to Flynn’s request for $34.8 million in damages, arguing that Flynn had failed to submit proof of any damages.
The magistrate judge issued an order postponing a decision on damages until the district court ruled on Wells Fargo’s motion to set aside the default judgment. The district court denied the motion, and the magistrate judge issued a second order instructing Flynn to submit documents in support of an award of damages. In response, Flynn filed a two-page memorandum requesting $42 million in damages. The memorandum did not have any attachments.
Wells Fai'go responded to Flynn’s memorandum, again arguing that Flynn had failed to submit proof of any damages.
The magistrate judge subsequently issued a report recommending that Flynn be awarded no damages because Flynn had failed to document any damages. Flynn submitted objections to the report, to which he attached numerous documents purporting to prove damages.
The district court initially oveidooked Flynn’s objections, adopted the magistrate judge’s recommendation, and entered an order awarding no damages to Flynn. Upon review of Flynn’s objections a few days later, the district court affirmed its original order and stated that the time had passed for Flynn to prove his damages. It further noted that even upon review of the documents submitted by Flynn, he was not entitled to damages. Flynn filed a motion for relief fi'om judgment, which the district court denied.
In this timely appeal, Flynn argues that he proved damages against Wells Fargo in his complaint and in his objections to the magisti’ate judge’s i*eport. Flynn further argues that Wells Fargo should not have been permitted to defend itself after entry of the default judgment. Flynn also moved for the appointment of counsel, claiming that he had mental issues and attaching a document showing that he had been diagnosed with paranoid schizophrenia. This court gi’anted the motion, and Flynn’s newly appointed counsel filed a supplemental brief arguing that the district court had abused its discretion by denying an award of damages and by denying Flynn’s motion for relief from judgment. Wells Fargo filed responsive briefs. People’s and Ridele have never entered appearances in the district court or in this court.
II.
Flynn argues that the district court ignored clear evidence of damages set *455 forth in the record, that the district court failed to construe the pleadings liberally, and that the district court should have held a hearing on damages. None of these arguments has merit.
We review a district court’s determination of damages pursuant to a default judgment for an abuse of discretion. See Steele v. Voyale Corp., 88 Fed.Appx. 916, 917 (6th Cir.2004). “Abuse of discretion is defined as a definite and firm conviction that the trial court committed a clear error of judgment.” Burrell v. Henderson, 434 F.3d 826, 831 (6th Cir.2006) (internal quotation marks and citation omitted).
‘Where damages are unliquidated a default admits only defendant’s liability and the amount of damages must be proved.” Antoine v. Atlas Turner, Inc., 66 F.3d 105, 110 (6th Cir.1995) (internal quotation marks omitted) (citing Kelley v. Carr, 567 F.Supp. 831, 841 (W.D.Mich.1983) (“A default judgment on well-pleaded allegations establishes only defendant’s liability; plaintiff must still establish the extent of damages.”)). After winning default judgment, Flynn was directed to submit “a Memorandum of Facts and Law and any documentation” that would help the court determine an appropriate award of damages. Flynn submitted a memorandum alleging he had suffered “extreme mental anguish, tremendous financial loss, his business, health and almost completely lost his wife to a massive heart attack and much more, too numerous to name.” He went on to request $34.8 million dollars, which was allegedly calculated by using the $10 million damages claim in his complaint compounded at a rate of 12% over 29 months.[1] He provided no documentation whatsoever to support his claim, and apparently believed that, because he won default judgment, he did not need to do so, despite the plain wording of the magistrate judge’s order.
Flynn had another chance to prove damages, but his second memorandum— though very similar to it — was no more informative than his first. Flynn now claimed $42 million in damages, allegedly calculated using the $10 million damages claim in his complaint compounded at a rate of 12% over 36 months.[2] Once again, he submitted no documentation whatsoever to support his claim of damages, despite the unambiguous wording of the magistrate judge’s order.
In his objections to the magistrate judge’s report, Flynn finally submitted documentation. The documentation comprises about 50 pages of receipts and records, including: (1) receipts for numerous purchases made at Walmart and Lowe’s, which allegedly went towards home improvement, but upon closer examination, include items such as mayonnaise, milk, and cigarettes; (2) countless medical bills and records, including bills from a practice specializing in kidney diseases, a record showing a bulging disc in the spine, and a bill from an infectious diseases specialist; (3) a form listing every imaginable home furnishing, with checkmarks beside items that were allegedly stolen or destroyed by Wells Fargo, with a dollar amount listed beside each item, indicating that the following items were taken from the property: a $7,590 piano; a $4,975 lawn mower; a $19,750 back hoe; a $14,575 horse trailer; a $15,800 camper; and a $21,395 ski *456 boat. The total estimated amount of lost personal property indicated on these forms, according to Flynn’s counsel, is $224,070. Flynn also submitted forms in which he claims that “priceless” fruit trees were cut down, a “priceless” cemetery was destroyed, and that the “priceless” “ambience” of the property was destroyed. Finally, he submitted forms showing that the property foreclosed upon was worth about $120,000 and that he paid $28,645.78 in closing costs.
The submitted documentation fails to support a claim for damages. As to the Walmart and Lowe’s receipts, he provides no evidence that any of the items bought were used at the property to improve it. And as noted above, many of the items were perishable and/or consumable goods that clearly were not used to improve the home. Accordingly, no damages could be awarded on that basis.
As to the medical expenses, he includes both his own and those of his wife, who is not even a party to this case. He provides no evidence, nor does he even suggest, that the foreclosure of his property caused the ailments leading to those medical expenses. Indeed, it does not take a medical degree to know that a property foreclosure cannot cause a ruptured disc in the spine, an infectious disease, or kidney failure. Accordingly, no damages could be awarded on that basis.
As to the itemized list of home furnishings, Flynn provided no proof that he actually owned anything in the list. Moreover, some of the items listed and the values associated with them are simply unbelievable, and if Flynn wanted damages, for example, for a back hoe worth nearly $20,000 or a $21,395 ski boat, he needed to provide proof of his ownership of those items and of their value. Because Flynn provided no proof that he actually owned any of the items listed, the district court could not award damages on that basis.
As to the “ambience,” the destroyed trees, and the cemetery, Flynn simply described them as “priceless,” and he failed to provide any evidence that anything was even destroyed. Accordingly, no damages could be awarded on that basis.
Although the evidence of the property value and the closing costs might be Flynn’s best argument in favor of damages, these claims also fail. He provides no evidence whatsoever that he had any equity in the property. Moreover, Flynn never actually provides any evidence that the foreclosure caused any damages. In fact, Flynn admits that the loan was “in arrears.” Accordingly, no damages could be awarded on that basis.
In short, Flynn did not even provide a starting point from which the district court might have been able to determine if he was entitled to any damages. Flynn’s counsel admits that the allegedly documented damages total only $256,000 plus interest and wholly fails to explain the $42 million figure claimed by Flynn. Counsel suggests Flynn is entitled to punitive damages, but provides no basis upon which the difference between $42 million and $256,000 could be attributed solely to punitive damages.
In her dissent, our colleague agrees that “Flynn’s documents and claims were overinclusive” and that “his multi-million-dollar damages figure was preposterous,” but goes on to suggest that the district court was nevertheless “obligated] to determine Flynn’s true damages.” But the burden of proof for establishing damages was Flynn’s. It was not the district court’s burden to prove or disprove whether Flynn owned any of the items for which he claimed damages, nor was it the district court’s duty to determine damages when Flynn had given it no credible point from *457 which to start, despite having multiple opportunities to do so. Indeed, the burden of establishing damages rested squarely and solely on Flynn, and he failed to carry it. See Antoine, 66 F.3d at 110 (citing Kelley, 567 F.Supp. at 841 (“A default judgment on well-pleaded allegations establishes only defendant’s liability; plaintiff must still establish the extent of damages.”))
Because Flynn failed to establish any plausible damages and claimed an enormous figure ($42 million) unsupported by the documentation he provided, Flynn fails to provide any reason whatsoever that the district court erred, much less the requisite “definite and firm conviction” that it “committed a clear error of judgment.” See Burrell, 434 F.3d at 831. Therefore, the district court did not abuse its discretion in denying damages.
Finally, we briefly address Flynn’s sub-points. The district court did not abuse its discretion by failing to liberally construe Flynn’s pro se pleadings or by failing to hold a hearing on damages. Flynn’s pleadings were nearly incomprehensible, and his claim was based on the right to “be treated equally.” The district court deciphered the pleadings, apparently found that they stated a claim upon which relief could be granted,[3] and gave Flynn two opportunities to specify and prove damages. Accordingly, it is clear that the district court was sufficiently lenient with Flynn.
Flynn never actually requested a hearing on damages, nor did he ever claim that — until his supplemental brief was filed in this court — he was improperly denied such a hearing. Nevertheless, based on what he submitted to the district court in an effort to prove damages (that is, absolutely nothing to the magistrate judge, and 55 pages of records (discussed above) to the district judge), it is clear that the district court’s determination that a hearing was unnecessary was not an abuse of discretion.
Flynn’s pro se brief raises an argument not addressed by his counsel, namely, that the district court erred by allowing Wells Fargo to respond to the issue of damages, notwithstanding the entry of default judgment against Wells Fargo. Flynn is mistaken. See Antoine, 66 F.3d at 111 (“[E]ven if [the defendant] is bound on the issue of liability, it still has the opportunity to respond to the issue of damages.”).
Accordingly, the district court’s denial of a damages award was not an abuse of discretion.
III.
Flynn also claims the district court abused its discretion by denying his motion for relief from judgment under Fed. R.Civ.P. 60(b)(1). Rule 60(b)(1) provides that if a party shows “mistake, inadvertence, surprise, or excusable neglect,” the court may relieve it from a final judgment. We review the denial of a motion for relief from judgment for abuse of discretion. Legg v. Chopra, 286 F.3d 286, 294 (6th Cir.2002).
Flynn argues that “based on his medical condition [presumably, paranoid schizophrenia] and the side effects from prescription drugs, his mental state was such that he did not understand the rules or court orders.” In determining whether relief is appropriate under Rule 60(b)(1), courts consider three factors: “(1) culpability — that is, whether the neglect was excusable; (2) any prejudice to the oppos *458 ing party; and (3) whether the party holds a meritorious underlying claim or defense. A party seeking relief must first demonstrate a lack of culpability before the court examines the remaining two factors.” Gumble v. Waterford Twp., 171 Fed.Appx. 502, 506 (6th Cir.2006) (citation omitted). Here, Flynn fails on the first prong. He did not submit any proof that any medical ailments or prescription medications affected his mental capacity.[4] On that basis alone, the district court could have reasonably denied the motion. But even if Flynn were able to show that his neglect was excusable, it would not be an abuse of discretion to deny relief on the basis of the third prong because Flynn has failed to show that he holds a meritorious underlying claim.
Accordingly, the district court did not abuse its 'discretion in denying Flynn’s 60(b) motion.
IV.
For the foregoing reasons, we AFFIRM the judgment of the district court.

. We note that even using the 12% interest rate claimed by Flynn, it is unclear how $10 million can compound to $34.8 million in 29 months. Flynn did not provide his calculations.

. It is again unclear exactly how Flynn arrived at a figure of $42 million. Flynn claims the figure was “calculated by professional (bank officers) money lenders, after the Plaintiff sought assistance in the calculations.”

. Wells Fargo did not appeal the entry of default judgment, so this court expresses no opinion as to whether the pleadings stated a claim or supported a judgment of liability.

. He did, however, submit evidence to this court, when requesting counsel, that he suffers from paranoid schizophrenia. The district court did not have that information when ruling on Flynn's 60(b) motion.