NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0413n.06

Case No. 21-3006

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Sep 02, 2021
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| ELIZABETH WESTMORELAND, | ) | OHIO |
| | ) | |
| Defendant-Appellant. | ) | |

BEFORE: BOGGS, CLAY, and KETHLEDGE, Circuit Judges.

BOGGS, Circuit Judge. This case concerns COVID-19 and an incarcerated woman's motion for compassionate release. Elizabeth Westmoreland is in prison for defrauding the federal government. She is over seventy and claims ill-health and high risk of harm should she be infected. The district court denied her motion for compassionate release last September and her motion for reconsideration in December. We consider if the district court: (1) incorrectly relied on U.S. Sentencing Guidelines § 1B1.13 in its analysis, (2) properly applied 18 U.S.C. § 3582(c)(1)(A), and (3) properly applied 18 U.S.C. § 3553(a). We affirm.

**I. FACTS AND PROCEDURE**

From 2013 to 2017, Westmoreland defrauded the Department of Education of $178,000 by submitting false applications for federal student loans and then using the living-expense portion of those loans. From 2012 to 2017, Westmoreland also defrauded the Social Security Administration (SSA) of $27,000 in retirement benefits by using two different Social Security numbers.

In July 2018, the U.S. Attorney for the Northern District of Ohio filed an Information charging Westmoreland on eleven counts of federal crimes. In August 2018, Westmoreland pleaded guilty to all eleven counts:

- Count 1: Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. § 1343, and Mail Fraud, in violation of 18 U.S.C. § 1341, all in violation of 18 U.S.C. § 1349;

- Counts 2–5: Wire Fraud, in violation of 18 U.S.C. § 1343;

- Counts 6–9: Mail Fraud, in violation of 18 U.S.C. § 1341;

- Count 10: Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A(a)(1); and

- Count 11: Theft of Government Property, in violation of 18 U.S.C. § 641.

In November 2018, the district court sentenced Westmoreland to a within-Guidelines sentence of 66 months of imprisonment: 42 months for Counts 1 through 9 and 11; and 24 consecutive months for Count 10. The court also set a term of three years of supervised release.

In August 2020, Westmoreland filed a compassionate-release motion, seeking to reduce her sentence to time served or to be placed in home confinement, primarily arguing that because she was over seventy years old, obese, and had hypertension, she was at great risk of complications should she be infected by COVID-19. She argued that these circumstances were therefore "extraordinary and compelling reasons" that warranted release under § 3582(c)(1)(A). Westmoreland also argued that the sentencing factors enumerated in 18 U.S.C. § 3553(a) favored her release.

In September 2020, the district court denied Westmoreland's motion. The court found that no "extraordinary and compelling reasons" required relief, relying on two main reasons: First, it found that Westmoreland's age, obesity, and medically managed hypertension did "not demonstrate that her individual circumstances place her at a substantially higher risk compared to those similarly situated people" and "are not so unusual or serious that they rise to the level of

2

extraordinary or compelling reasons for relief." Second, the district court stressed that there had been no COVID-19 cases at Westmoreland's prison, Alderson. The court also emphasized that Westmoreland had only served 17 months of her sentence and "has not demonstrated that she is deterred by incarceration or offered evidence that would reassure the Court that she is no longer a danger to the community."

In December 2020, Westmoreland filed a motion for reconsideration, challenging the district court's September denial and alleging that there had been a COVID-19 outbreak at Alderson. The motion stated that the outbreak started in November and had spread to her unit by December, infecting one inmate and six staff members, putting her at far greater risk for infection than at the time of her original motion. Westmoreland also argued that the district court incorrectly relied on USSG § 1B1.13 in its September denial and that such reliance was at odds with the Sixth Circuit's subsequent holding in *United States v. Jones*, 980 F.3d 1098 (6th Cir. 2020), issued that November. Westmoreland further argued that her aggravated-identity-theft sentence, which courts are required to disregard in weighing the § 3553(a) sentencing factors for a sentence reduction, 18 U.S.C. § 1028A(b)(3), should also have been disregarded when the district court reweighed those factors for a compassionate-release reduction. Finally, Westmoreland argued that she was not a danger to the community.

The district court denied Westmoreland's motion for reconsideration, ignoring the COVID-19 infections at her prison and writing that "Nothing in Ms. Westmoreland's Motion for reconsideration changes the Court's assessment of her health conditions and age as they relate to the determination of extraordinary and compelling circumstances." Among other factors discussed, the district court emphasized that its September denial did not incorrectly rely on

3

§ 1B1.13 and that its determination that "Westmoreland still poses a danger to the community remains unchanged."

Westmoreland filed a timely notice of appeal.

## II. JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction under 28 U.S.C. § 1291. We review a district court's denial of a motion for compassionate release for an abuse of discretion. *United States v. Elias*, 984 F.3d 516, 520 (6th Cir. 2021). "An abuse of discretion occurs when the district court 'relies on clearly erroneous findings of fact, uses an erroneous legal standard, or improperly applies the law.'" *Ibid*. (quoting *United States v. Flowers*, 963 F.3d 492, 497 (6th Cir. 2020)). "A clear example of an abuse of discretion occurs where the district court fails to consider relevant 'facts upon which the exercise of its discretionary judgment is based.'" *Burrell v. Henderson*, 434 F.3d 826, 831 (6th Cir. 2006) (quoting *In re Walter*, 282 F.3d 434, 440 (6th Cir. 2002)). "This analysis examines the entire sentencing record, 'including the records from the original sentencing, records on the modification motion, and the final compassionate release decision.'" *Elias*, 984 F.3d at 520 (quoting *Jones*, 980 F.3d at 1112). We will reverse only when "firmly convinced that a mistake has been made." *United States v. Webb*, 760 F.3d 513, 517–18 (6th Cir. 2014).

## III. ANALYSIS

"Until recently, denying relief solely based on an inmate's failure to demonstrate the extraordinary and compelling factors set forth in § 1B1.13 would have been appropriate. But today, those factors do not control in cases involving defendant-filed motions." *United States v. Hampton*, 985 F.3d 530, 533 (6th Cir. 2021); *see also United States v. Tomes*, 990 F.3d 500, 503 (6th Cir. 2021). After the First Step Act of 2018, district courts must now consider two questions when deciding defendant-filed § 3582(c)(1)(A) motions: "(1) whether extraordinary and compelling

circumstances merit a sentence reduction; and (2) whether the applicable § 3553(a) factors warrant such a reduction." *Hampton*, 985 F.3d at 531 (citing *Jones*, 980 F.3d at 1106). "If the court finds that the defendant fails at [either] one of these . . . steps, it need not address the other[ ] before denying the motion." *Tomes*, 990 F.3d at 502 (citing *Elias*, 984 F.3d at 519). "Until the Sentencing Commission updates § 1B1.13 to reflect the First Step Act, district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion." *Jones*, 980 F.3d at 1109.

We have remanded or reversed a district court's denial of a defendant's compassionate-release motion when it is unclear if the district court relied solely on the § 1B1.13 factors, *Hampton*, 985 F.3d at 533, and where the district court did rely solely on those factors, *Tomes*, 990 F.3d at 503. But a district court *may* "consider those [§ 1B1.13 factors] as part of its discretionary inquiry into whether a case presents extraordinary and compelling reasons for release . . . [so long as the court does] not proceed as though § 1B1.13 constrains its analysis of what constitutes extraordinary and compelling reasons for release." *Tomes*, 990 F.3d at 503 n.1. Further, "even if a district court wrongly constrains itself to § 1B1.13 to define extraordinary and compelling reasons for release, we can still affirm if the court uses § 3553(a) as an independent reason to deny relief." *Tomes*, 990 F.3d at 503.

A. *The district court did not incorrectly rely on the now inapplicable § 1B1.13 factors when it found no extraordinary or compelling reasons to grant Westmoreland compassionate release under § 3582(c)(1)(A).*

Westmoreland argues that "the district court's continued discussion of [her] 'ability to provide self-care within the institution' demonstrates a continued reliance upon [the] inapplicable [§ 1B1.13] standard" and "contravenes the reasoning in *Jones*." Br. for Defendant-Appellant at 8. This is a strained reading. The district court did not rely on § 1B1.13's self-care factor. The district

court's December denial of Westmoreland's motion for reconsideration clearly incorporated its analysis and reasoning from its September denial of Westmoreland's compassionate-release motion ("Nothing in Ms. Westmoreland's Motion for reconsideration changes the Court's assessment of her health conditions and age as they relate to the determination of extraordinary and compelling circumstances"). The district court's September analysis and determination that there were no "extraordinary or compelling reasons" for relief did not rely on, or even refer to, the § 1B1.13 factors. The district court gave two main reasons in its analysis: First, it stated that Westmoreland's age, obesity, and medically managed hypertension did "not demonstrate that her individual circumstances place her at a substantially higher risk compared to those similarly situated people" and were "not so unusual or serious that they rise to the level of extraordinary or compelling reasons for relief." Second, the district court relied on the fact that there had been no COVID-19 cases at Westmoreland's prison. Although the September denial *did* discuss § 1B1.13(2) in determining that Westmoreland "has not demonstrated that she is no longer a danger to the community," this point was noted after the "extraordinary and compelling circumstances" analysis in the following paragraph and, regardless, was not the sole basis for denying Westmoreland relief. Only the December denial mentioned § 1B1.13's "self-care" factor, but the court did not rely on it as the sole basis for denying relief, either.

B. *The district court did not abuse its discretion when it decided that the § 3553(a) factors did not warrant granting Westmoreland's motion for compassionate release.*

The district court denied Westmoreland relief in September in large part because of her history of repeated fraud offenses as an adult. The court stressed that Westmoreland was sentenced to forty-five months in prison for various frauds when she was forty-four years old but committed fraud again in the instant case at a much greater age. The court concluded that "Westmoreland has

6

not demonstrated that she is deterred by incarceration or offered evidence that would reassure the Court that she is no longer a danger to the community." The district court reaffirmed these reasons in its December denial, considering "all of the factors set forth in" § 3553(a) and noting that deterrence and danger to the community among those factors. The court emphasized the duration and relative sophistication of the fraud: "Westmoreland was involved in a long-running complex scheme to defraud and take over other people's identities." The court's December denial concluded that its previous "conclusion that Ms. Westmoreland still poses a danger to the community remains unchanged." The § 3553(a) factors are not elements, but *factors*. Accordingly, a district court may use its discretion to assign greater weight to some factors than it does to others. Here, the district court did not abuse its discretion when it concluded that Westmoreland's history of repeated fraud made her a danger to the community that outweighed any factors that might exist in her favor.

Because Westmoreland fails to show that the district court abused its discretion in its § 3553(a) analysis, we need not consider whether Westmoreland demonstrated that "extraordinary and compelling" reasons supported her claim for compassionate release. "If the court finds that the defendant fails at any one of these . . . steps, it need not address the others before denying the motion." *Tomes*, 990 F.3d at 502 (citing *Elias*, 984 F.3d at 519).

## IV. CONCLUSION

The decision of the district court is AFFIRMED. Westmoreland may, of course, file a new motion for compassionate release based on whatever new or continuing conditions may exist at Alderson.

**CLAY, Circuit Judge, dissenting.** Defendant Elizabeth Westmoreland appeals the district court's denial of her motion for compassionate release based primarily on her age, medical conditions, and the COVID-19 pandemic. It is undisputed that the district court ignored Westmoreland's argument that there were COVID-19 infections within the prison in which she was housed that jeopardized her health and well-being in light of her medical status. And the Supreme Court has held that a district court must consider all of a defendant's arguments in support of a sentence reduction. Therefore, because it is unclear whether the district court considered the COVID-19 outbreak in Westmoreland's facility, I dissent.

## I.

As the majority explains, Westmoreland's original motion for compassionate release relied primarily on her age, her obesity and hypertension, and the general existence of the COVID-19 pandemic within the United States. The district court denied the motion, in part, based on its finding that "there have been no confirmed cases of COVID-19 at FPC Alderson." (R. 32 at PageID# 458.) But by time that Westmoreland filed her subsequent motion for reconsideration, that was no longer true. Thus, Westmoreland highlighted the "active outbreak" in support of her motion. (R. 35 at PageID# 463.) As the majority notes, the district court "denied Westmoreland's motion for reconsideration, ignoring the COVID-19 infections at her prison and writing that 'Nothing in Ms. Westmoreland's Motion for reconsideration changes the Court's assessment of her health conditions and age as they relate to the determination of extraordinary and compelling circumstances.'" Maj. Op. at 3.

Although the district court ignored Westmoreland's argument that the ongoing COVID-19 outbreak at her facility provided additional support for granting her compassionate release, the majority holds that the district court did not abuse its discretion in its § 3553(a) analysis. The

majority explains that the district court looked to the § 3553(a) factors and concluded that Westmoreland still posed a danger to society. The majority therefore holds that "the district court did not abuse its discretion when it concluded that Westmoreland's history of repeated fraud made her a danger to the community that outweighed any factors that might exist in her favor." Maj. Op. at 7.

However, the Supreme Court has held that when weighing the § 3553(a) factors, "[t]he sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Rita v. United States*, 551 U.S. 338, 356 (2007). Thus, in *Chavez-Meza v. United States*, the Supreme Court explained that a district court must "consider[] the parties' arguments" when ruling on a motion for a sentence modification. 138 S. Ct. 1959, 1965 (2018); *see also* 18 U.S.C. § 3582(c)(1)(a) (requiring the district court to "consider[] the factors set forth in section 3553(a) to the extent that they are applicable."); 18 U.S.C. § 3553(a) ("The court, in determining the particular sentence to be imposed, shall consider . . .").

To be sure, the sentencing judge does not always need to explicitly address every argument raised by the defendant because "the 'law leaves much' to 'the judge's own professional judgment.'" *Chavez-Meza*, 138 S. Ct. at 1966 (quoting *Rita*, 551 U.S. at 356). For example, in *Chavez-Meza*, the defendant moved for a sentence modification after the Sentencing Commission "lowered the relevant Guidelines range from 135 to 168 months to 108 to 135 months." *Id.* at 1964. The district court entered a form order certifying that it had "considered" the defendant's motion and had "'tak[en] into account' the § 3553(a) factors and the relevant Guidelines policy statement," and lowered the defendant's sentence to 114 months. *Id.* at 1965 (alteration in original). Because

9

the defendant had requested a 108 month sentence, he appealed on the grounds that the district court "did not adequately explain" the sentence it imposed. *Id.*

The Supreme Court affirmed. Without deciding, the Supreme Court assumed that "district courts have equivalent duties when initially sentencing a defendant and when later modifying the sentence." *Id.* Under the *Rita* standard, the Supreme Court explained that "the 'law leaves much' to 'the judge's own professional judgment,'" *id.* at 1966 (quoting *Rita*, 551 U.S. at 356), but that the district court "must adequately explain the chosen sentence to allow for meaningful appellate review," *id.* at 1965 (quoting *Gall v. United States*, 552 U.S. 38, 50 (2007)). As to the case before it, the Court explained that, at the defendant's original sentencing, the district court had provided extensive reasons for imposing a 135 month sentence. *See id.* at 1966–67. Considering that "[t]his record was before the judge when he considered [the defendant's] request for a sentence modification" and that "[h]e was the same judge who had sentenced petitioner originally," the Supreme Court explained that "[t]he record as a whole strongly suggests that the judge originally believed that, given [the defendant's] conduct, 135 months was an appropriately high sentence," and "[s]o it is unsurprising that the judge considered a sentence somewhat higher than the bottom of the reduced range to be appropriate." *Id.* at 1967. Thus, "there was not much else for the judge to say." *Id.*

But the Supreme Court was careful to cabin its holding: "[G]iven the simplicity of *this* case, the judge's awareness of the arguments, his consideration of the relevant sentencing factors, and the intuitive reason why he picked a sentence above the very bottom of the new range, the judge's explanation (minimal as it was) fell within the scope of the lawful professional judgment that the law confers upon the sentencing judge." *Id.* at 1967–68. The Court went on to explain that

"[i]t could be that, under different facts and a different record, the district court's use of a barebones form order in response to a motion like [the defendant's] would be inadequate." *Id.* at 1967.

Last year, in *United States v. Williams*, this Court considered the amount of explanation necessary when a district court rules on a request for a sentence modification. 972 F.3d 815, 816–817 (6th Cir. 2020) (order). In *Williams*, the defendant "filed a motion to reduce his sentence under the [First Step] Act, arguing, among other things, that his good conduct in prison warranted a reduced sentence." *Id.* at 816. "The district court wrote a reasoned opinion explaining that it had considered the 18 U.S.C. § 3553(a) sentencing factors (including Williams's several prior drug convictions), and concluded that 'the 262-month within guideline sentence originally imposed remains sufficient and necessary to protect the public from future crimes of the defendant, to provide just punishment, and to provide deterrence.'" *Id.* "The court did not, however, address Williams's argument about his post-conviction conduct." *Id.*

Relying on *Chavez-Meza*, we noted that "[w]hen considering the adequacy of the district court's explanation for its decision regarding a sentencing modification, we consider the record both for the initial sentence and the modified one." *Id.* (citing *Chavez-Meza*, 138 S. Ct. at 1967–68). Citing *Rita*, we further explained that "[t]he district court need not respond to every sentencing argument, but the record as a whole must indicate the reasoning behind the court's sentencing decision." *Id.* at 817 (citing *Rita*, 551 U.S. at 356–59). Turning to the specific facts of the case, we explained that the district court's failure to "mention" the defendant's "argument regarding his post-conviction conduct" was an abuse of discretion because "that conduct by definition occurred after his initial sentencing in 2005, which means that neither the record for his initial sentence nor

11

for his First Step Act motion provides us any indication of the district court's reasoning as to that motion." *Id.*[1]

As in *Williams*, Westmoreland raised an argument that was necessarily not considered by the district court at her initial sentencing or in the district court's denial of her original motion for compassionate release—there was no COVID-19 outbreak in Westmoreland's facility at either of those two prior weighings of the § 3553(a) factors. And, like in *Williams*, the district court failed to provide its reasons for rejecting Westmoreland's argument. Further, the district court explained in its order denying Westmoreland's original motion for compassionate release that it viewed the lack of a COVID-19 outbreak in Westmoreland's facility as a significant factor. Therefore, this is not a case where it is "sufficient for purposes of appellate review that the judge simply relied upon the record." *Chavez-Meza*, 138 S. Ct. at 1965.

In short, Westmoreland raised the COVID-19 outbreak at her facility in her motion for reconsideration. But the district court implied that it failed to consider this argument. The most that was said by the district court was that "[n]othing in Ms. Westmoreland's Motion for

---

[1] *See also United States v. Richardson*, 960 F.3d 761, 765 (6th Cir. 2020) ("[T]he district court explained how the defendant's history and characteristics (including his post-incarceration conduct) weighed against granting the motion. That's ample proof that the district court considered Richardson's post-sentencing conduct when reaching its decision."); *United States v. Ruffin*, 978 F.3d 1000, 1008 (6th Cir. 2020) ("When considered with the whole record, the district court's decision more than adequately explained why the § 3553(a) factors did not support a sentence reduction."); *United States v. Jones*, 980 F.3d 1098, 1115 (6th Cir. 2020) ("Reading the judge's compassionate release decision and the original sentencing hearing transcript together reveals that the district judge carefully considered all relevant § 3553(a) factors."); *United States v. Elias*, 984 F.3d 516, 521 (6th Cir. 2021) ("[W]e require that the district judge 'set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority.'" (quoting *Jones*, 980 F.3d at 1113)); *United States v. Hampton*, 985 F.3d 530, 533 (6th Cir. 2021) (holding that the district court's "fail[ure] to identify which specific aspect(s) of the government's brief the district court found compelling," deprived the defendant of "meaningful appellate review."); *cf. United States v. Nichols*, 897 F.3d 729, 738 (6th Cir. 2018) ("Because the district court elected to correct Defendant's sentence rather than to conduct a *de novo* resentencing, the district court could properly rely on the explanation that the sentencing court originally provided in support of Defendant's sentence. *See Chavez-Meza* [138 S. Ct. at 1967] . . . But to the extent that Defendant's meritorious § 2255 motion rendered the original explanation insufficient 'to allow for meaningful appellate review and to promote the perception of fair sentencing,' [*Gall*, 552 U.S. at 50], the district court was obligated to supplement the original explanation.").

reconsideration change[d] the Court's assessment of her health conditions and age . . ." (R. 37 at PageID# 476.) However, the § 3553(a) factors require the district court to "consider" the need "to provide the defendant with . . . medical care." 18 U.S.C. § 3553(a)(2)(D). Accordingly, the district court abused its discretion in its analysis of the § 3553(a) factors.

## II.

Moreover, for the same reason, the district court abused its discretion in analyzing whether Westmoreland presented an extraordinary and compelling reason warranting release. "A clear example of an abuse of discretion occurs where the district court fails to consider relevant 'facts upon which the exercise of its discretionary judgment is based.'" *Burrell v. Henderson*, 434 F.3d 826, 831 (6th Cir. 2006) (quoting *In re Walter*, 282 F.3d 434, 440 (6th Cir. 2002)). And although the outbreak of COVID-19 within the prison walls was undoubtedly relevant—after all, the absence of such an outbreak had previously been relied upon by the district court to deny Westmoreland's original motion—the district court's order fails to demonstrate that it considered whether the outbreak supported Westmoreland's motion.

I therefore dissent.